FILED
United States Court of Appeals
Tenth Circuit

February 17, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

AGAPITO GARZA,

      Petitioner-Appellant,

v.

BLAKE DAVIS,[*] Warden, Federal
Prison Camp—Florence,

      Respondent-Appellee.

No. 09-1448

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 09-cv-1292-ZLW)**

---

Agapito Garza, pro se.

Paul Farley, Assistant United States Attorney (David M. Gaouette, United States
Attorney, with him on the brief), Office of the United States Attorney, District of
Colorado, Denver, Colorado, for Respondent-Appellee.

---

Before **KELLY**, **BRISCOE**, and **HOLMES**, Circuit Judges.[**]

---

[*]     Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Blake
Davis is substituted for Ron Wiley as the appellee in this action.

[**]     After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**HOLMES**, Circuit Judge.

Agapito Garza, a federal prisoner currently incarcerated at the prison camp in Florence, Colorado, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. In his petition, Mr. Garza alleged, like other inmates before him, that Bureau of Prison ("BOP") officials at that facility are categorically denying review and transfer of eligible inmates to lower-security facilities such as community correction centers ("CCCs") and residential re-entry centers ("RRCs") in violation of 18 U.S.C. §§ 3621(b) and 3624(c), and 28 C.F.R. §§ 570.20 and 570.21. Mr. Garza also alleged that officials are denying graduates of the BOP Residential Drug and Alcohol Program ("RDAP") a sentence reduction in conjunction with an RRC placement, in violation of federal law and prison regulations. After ordering the government to file a response limited to the issue of whether it intended to raise the affirmative defense of failure to exhaust administrative remedies, the district court dismissed Mr. Garza's petition on exhaustion grounds. On appeal, Mr. Garza argues that the district court erred by (1) requiring him to exhaust BOP's administrative remedies, and (2) ordering the government to file a response to his petition. Exercising our jurisdiction under 28 U.S.C. § 1291, we **AFFIRM**. We also **DENY** Mr. Garza's motion to proceed *in forma pauperis*.

-2-

## I.     Background

Mr. Garza filed his habeas petition on June 3, 2009, in the United States District Court for the District of Colorado. In that petition, Mr. Garza alleged that BOP officials at the Florence prison camp are categorically denying the review and transfer of eligible inmates to CCCs and to RRCs for more than six months, in violation of 18 U.S.C. §§ 3621(b) and 3624(c). Mr. Garza claimed that he had been denied consideration for transfer to a CCC and he also wants to spend the maximum amount of pre-release time in an RRC.[1] Finally, Mr. Garza alleged that prison camp officials improperly are denying graduates of RDAP a twelve-month sentence reduction in conjunction with a twelve-month RRC placement. In his petition, Mr. Garza acknowledged that he had not exhausted BOP's administrative remedies, but alleged that exhaustion was not necessary because it would be futile since BOP had predetermined the issues as demonstrated by its categorical denial of transfers. Mr. Garza purported to file the petition on behalf of himself and all others similarly situated; he also filed a motion to certify the class and for appointment of class counsel.

The district court directed the government to file a response if it intended to raise an affirmative defense regarding exhaustion of administrative remedies. The government complied and filed such a response, arguing that the petition

---

[1]     Although Mr. Garza's projected release date is February 17, 2013, he apparently identifies himself as a pre-release inmate eligible for these types of transfers.

should be dismissed due to Mr. Garza's failure to exhaust administrative remedies.

The court concluded that the BOP administrative remedy procedure is available to Mr. Garza under 28 C.F.R. §§ 542.10–19. The court determined that Mr. Garza had not demonstrated that exhaustion would be futile because he had made only conclusory allegations insufficient to excuse his failure to exhaust. Moreover, the court noted that, even if prison camp officials were acting improperly, BOP's administrative review process includes two levels of review beyond the institutional level (here, the prison camp level), which presumably would be free from any biases that prison camp officials purportedly might possess. Accordingly, the court dismissed Mr. Garza's petition without prejudice for failure to exhaust administrative remedies. This appeal followed.

## II. Discussion

On appeal, Mr. Garza continues to allege that BOP and prison camp officials have violated federal law by categorically denying inmate requests to transfer to RRCs and CCCs. He also contends that the district court erroneously dismissed his petition because exhaustion would be futile under *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 239 n.2 (3d Cir. 2005).[2] Finally, Mr.

---

[2] Because Mr. Garza is proceeding pro se, we construe his filings liberally. *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003). Although his opening brief does not explicitly make all of the futility arguments that he raised before the district court, Mr. Garza raised the issue generally by

(continued...)

Garza argues that the district court erred in ordering the government to file a response to his petition.

## A. Statutory Framework

To place Mr. Garza's arguments in context, we will first examine the recent changes to the statutory framework governing pre-release community confinement and BOP's implementation of those statutes. Two federal statutes, 18 U.S.C. §§ 3621(b) and 3624(c), govern this issue. Section 3621(b) provides that BOP has the authority to designate where an inmate will be imprisoned and to direct his or her transfer to another facility, including RRCs and CCCs.[3] In making that determination, BOP must consider:

> (1) the resources of the facility contemplated;

> (2) the nature and circumstances of the offense;

> (3) the history and characteristics of the prisoner;

---

[2](...continued)
including in his opening brief a citation to a case involving futility, *Woodall*, 432 F.3d at 239 n.2. Because we construe his filings liberally we also will consider the futility arguments Mr. Garza raised before the district court.

[3]     RRCs and CCCs are two words used to describe the same animal—"residence in a community treatment center, halfway house, restitution center, mental health facility, alcohol or drug rehabilitation center, or other community correctional facility (including residential re-entry centers); and participation in gainful employment, employment search efforts, community service, vocational training, treatment, educational programs, or similar facility-approved programs during non-residential hours." 28 C.F.R. § 570.20(a). BOP has chosen to refer only to RRCs "to provide 'a clearer description of the programs and services being offered' in such facilities." R. at 76 n.3 (Mem., dated Nov. 14, 2008).

(4) any statement by the court that imposed the sentence--

> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

> (B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).

Section 3624(c) in turn provides in relevant part that

> [t]he Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1). Before 2008, § 3624(c) limited the time for which an inmate could be eligible for such transfer to the final six months or ten percent of his sentence, whichever was less. 18 U.S.C. § 3624(c) (2000). The Second Chance Act of 2007, Pub. L. No. 110-199, § 251, 122 Stat. 657, 692 (2008)), amended the statute to provide for the current eligibility time frame of twelve months.

Prior to that amendment, BOP had utilized a categorical approach to community confinement requests: it would only designate inmates to RRC facilities during the last ten percent of the sentence being served so long as that period did not exceed six months. *See* Community Confinement, 70 Fed. Reg.

-6-

1659, 1659 (Jan. 10, 2005) (codified at 28 C.F.R. pt. 570 (2005)) (finalizing rules regarding categorical exercise of discretion for designating inmates to community confinement); *see also* Community Confinement, 69 Fed. Reg. 51,213, 51,213–14 (Aug. 18, 2004) (proposed categorical rules); *Wedelstedt v. Wiley*, 477 F.3d 1160, 1162–63 (10th Cir. 2007) (discussing regulations codifying categorical approach); *Woodall*, 432 F.3d at 239–41 (same). In *Wedelstedt*, we invalidated BOP's categorical approach, holding that BOP's "categorical refusal to consider the five statutory factors [set forth by 18 U.S.C. § 3621(b)] is in direct conflict with the clear congressional command that the factors be considered if a transfer is sought or recommended." 477 F.3d at 1167.

After the eligibility period for community confinement in 18 U.S.C. § 3624(c) was expanded to twelve months, BOP issued an interim rule, revising its regulations to reflect that expansion. *See* Pre-Release Community Confinement, 73 Fed. Reg. 62,440, 62,443 (Oct. 21, 2008) (codified at 28 C.F.R. § 570.21(a) (2009)) (interim rule revising BOP regulations to conform with the Second Chance Act of 2007). BOP subsequently issued two memoranda providing guidance to its staff regarding the proper implementation of the amended statutes while BOP was undergoing formal rulemaking to revise more permanently its regulations. The first memorandum, issued on April 14, 2008, addressed the statutory changes following the Second Chance Act of 2007, emphasizing that the pre-release time frame for RRC and CCC had been increased

to twelve months and that there was no percentage limitation on time to be served. Additionally, the memorandum instructed staff that they must make pre-release placement decisions "on an individual basis in every inmate's case" and that "the Bureau's categorical timeframe limitations on pre-release community confinement . . . are no longer applicable, and must no longer be followed." R. at 65; *see also id*. at 67 ("Bureau staff must approach every individual inmate's assessment with the understanding that he/she is now eligible for a maximum of 12 months pre-release RRC placement."). Staff were instructed to review inmates for pre-release placements at an earlier time, e.g., seventeen to nineteen months before their projected release dates, and to consider pre-release inmates on an individual basis using the five factors from 18 U.S.C. § 3621(b). However, the memorandum also stated that "[w]hile the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less" and that "[s]hould staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager." *Id*. at 67.

The second BOP memorandum, issued on November 14, 2008, addressed inmate requests for transfer to RRCs when more than twelve months remained from their projected release date (that is, non-prerelease inmates). In relevant

part, the memorandum instructed staff that they could not automatically deny a non-pre-release inmate's request for pre-release transfer, but must give each request individualized consideration. *Id.* at 74–75 ("In other words, staff cannot say that an inmate, whatever the circumstances, is automatically ineligible for transfer to a RRC. Rather, staff must first review the inmate's request on its individual merits . . . ."). However, if an inmate were to request transfer prior to the pre-release time frame of twelve months, although staff must individually consider the request, they were instructed that there was "no need" to perform immediately the statutorily prescribed individualized review. *Id.* at 75. Rather, the inmate should be informed that the request would be fully reviewed in conjunction with the next scheduled Program Review. Staff were cautioned that they should not inform the inmate that he or she was ineligible for transfer because "[t]elling an inmate that he/she is ineligible for RRC placement is the same as automatically denying the inmate from even being considered for such placement, and is not in accord with Bureau Policy." *Id.* The second memorandum also stated that "[a]n RRC placement beyond six months should only occur when there are unusual or extraordinary circumstances justifying such placement, and the Regional Director concurs." *Id.* at 76.

In his petition, Mr. Garza alleges that BOP and prison camp staff have in practice not changed their categorical approach to inmate transfer requests, despite the changes to the statutory and regulatory scheme. Instead, he alleges,

-9-

they continue to deny categorically all prison camp inmate requests for pre-release transfers without individual consideration. Having established the relevant statutory framework, we now turn to Mr. Garza's first argument on appeal: that he was not required to exhaust BOP's administrative remedies before filing his habeas petition because such exhaustion would be futile.

## B. Exhaustion of Administrative Remedies

"We review the district court's dismissal of a § 2241 habeas petition de novo." *Broomes v. Ashcroft*, 358 F.3d 1251, 1255 (10th Cir. 2004). The exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief, although we recognize that the statute itself does not expressly contain such a requirement. *See Williams v. O'Brien*, 792 F.2d 986, 987 (10th Cir. 1986) (per curiam) (noting that "judicial intervention is usually deferred until administrative remedies have been exhausted"). A narrow exception to the exhaustion requirement applies if a petitioner can demonstrate that exhaustion is futile. *See Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 235–36 (6th Cir. 2006) (recognizing futility exception in context of § 2241 petition); *cf. Fairchild v. Workman*, 579 F.3d 1134, 1155 (10th Cir. 2009) (discussing futility as to 28 U.S.C. § 2254 petitions).

As the district court explained, BOP regulations require a prisoner to attempt informal resolution of a complaint and, if that fails, to submit a formal request for an administrative remedy to the institution. *See* 28 C.F.R.

§§ 542.13–14. If the inmate does not obtain a satisfactory resolution from the institution itself, he then may file a regional appeal followed by a national appeal. *Id.* § 542.15(a). Mr. Garza concedes that he did not exhaust the administrative remedies provided by BOP. Accordingly, unless he can demonstrate that attempting to do so would be futile, Mr. Garza cannot proceed with his § 2241 petition.

Mr. Garza raises several arguments to support his contention that exhaustion is futile. These same arguments have been previously raised in other appeals by inmates from the Florence prison camp and have been rejected by various panels of this court. *See Ciocchetti v. Wiley*, No. 09-1336, 2009 WL 4918253 (10th Cir. Dec. 22, 2009); *Torres-Villa v. Davis*, No. 09-1366, 2009 WL 4071834 (10th Cir. Nov. 25, 2009); *Bun v. Wiley*, No. 09-1289, 2009 WL 3437831 (10th Cir. Oct. 27, 2009); *see also Lucero v. Wiley*, No. 09-1344, 2009 WL 4269700 (10th Cir. Dec. 1, 2009) (dismissing appeal from Florence inmate raising similar arguments for failure to exhaust on slightly different grounds); *Padilla v. Wiley*, No. 09-1362, 2009 WL 4269699 (10th Cir. Dec. 1, 2009) (same). Although those panels issued non-binding unpublished decisions, upon our careful study of their analyses, we conclude that those panels were correct in rejecting futility arguments akin to those raised by Mr. Garza here. We need not opine on the validity of Mr. Garza's claims of wrongdoing by prison camp officials on their merits. It is sufficient for us to conclude, as we do, that Mr.

-11-

Garza cannot establish that he qualifies for the narrow futility exception to the exhaustion requirement.

First, like the previous petitioners from Florence prison camp, Mr. Garza argues that the BOP memoranda issued on April 14, 2008 and November 14, 2008 demonstrate that administrative review would be futile. *See Ciocchetti*, 2009 WL 4918253, at *2–3; *Torres-Villa*, 2009 WL 4071834, at *1; *Bun*, 2009 WL 3437831, at *2. We agree with the previous panels and with the district court; the BOP memoranda support the opposite conclusion. *See Ciocchetti*, 2009 WL 4918253, at *3; *Torres-Villa*, 2009 WL 4071834, at *1; *Bun*, 2009 WL 3437831, at *2. They indicate that "BOP recognizes its authority to place inmates in RRCs and/or CCCs for periods of time exceeding six months" and do not reflect any policy of categorical denial. *Ciocchetti*, 2009 WL 4918253, at *3**.**

Mr. Garza also argues that our decision in *Wedelstedt*, in which we invalidated previous BOP regulations, supports his futility argument. However, previous panels of our court have twice rejected this same contention. *See Torres-Villa*, 2009 WL 4071834, at *2; *Bun*, 2009 WL 3437831, at *1. And we agree with those panels. In particular, we observe that BOP has adopted new interim regulations to replace those that were invalidated in *Wedelstedt*. Those regulations perforce must be the focus of Mr. Garza's challenge. Therefore, under the circumstances of this case, *Wedelstedt*'s holding is not germane. Moreover, to the extent that Mr. Garza argues that exhaustion is futile because

-12-

officials at the Florence prison camp are categorically denying prisoner transfer requests, the higher administrative review levels available (regional and national appeals) demonstrate that exhaustion is not futile.

Mr. Garza further argues that exhaustion is not required because he seeks to challenge the validity rather than the application of BOP regulations. "But a prisoner can[not] do away with the exhaustion requirement simply by framing his habeas petition as an attack on a regulation's validity rather than its application. The relevant question remains whether it would be *futile* to require the prisoner to go through the BOP review process." *Torres-Villa*, 2009 WL 4071834, at *2. And we conclude that it would not be. The regulations challenged by Mr. Garza do not "definitively prevent the BOP from transferring him to a CCC while he is a non-prerelease inmate or from placing him in a RRC for the twelve months preceding his release. Indeed, the memoranda he calls to our attention make clear that each is a possible outcome of the BOP review process." *Id.* Consequently, Mr. Garza must go through that administrative remedy process as a prerequisite to filing a habeas petition.

### C. Order to File a Response

Mr. Garza's second argument on appeal concerns the district court's order to the government. Mr. Garza contends that the district court improperly ordered the government to file a response to his habeas petition if it wished to raise the

affirmative defense of exhaustion. He seems to believe this "failure to follow proper procedure" renders the judgment "voidable." Aplt. Br. at 3. We disagree.

"District courts generally are afforded great discretion regarding trial procedure applications (including control of the docket and parties), and their decisions are reviewed only for abuse of discretion." *United States v. Nicholson*, 983 F.2d 983, 988 (10th Cir. 1993) (citations and internal quotation marks omitted). Accordingly, the district court possessed the discretion either to dismiss the § 2241 petition if it appeared that the petitioner was not entitled to relief or to order the respondent to file a response. We perceive support for our conclusion in the rules governing the judicial management of litigation in the analogous context of § 2254 petitions. Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts states that a district court judge must either dismiss a petition if it "plainly appears" from the petition and any exhibits that the petitioner is not entitled to relief *or* the district judge must order the respondent to file an answer, motion or other response. Fed. R. Governing Section 2254 Cases in the U.S. Dist. Cts. 4; *see also Ciocchetti*, 2009 WL 4918253, at *4. In seeking a response from the government, the district court in this case did no more than afford the government an opportunity to address Mr. Garza's arguments and limited the response to the issue of exhaustion in the interest of judicial efficiency. In doing so, the district court was well within the proper exercise of its discretion.

**II.    Conclusion**

Mr. Garza has not exhausted his administrative remedies, nor has he shown that exhaustion would be futile.  Furthermore, Mr. Garza has not demonstrated that the district court abused its discretion in ordering the government to file a response to his petition.  Accordingly, we **AFFIRM** the district court's dismissal of Mr. Garza's habeas petition.  Furthermore, we **DENY** Mr. Garza's motion for leave to proceed *in forma pauperis*.