FILED
United States Court of Appeals
Tenth Circuit

March 10, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOSE YAIR GOMEZ-DIAZ,

    Defendant-Appellant.

No. 10-4161
(D.Ct. No. 2:99-CR-00652-BSJ-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]

Before **BARRETT**, **ANDERSON**, and **BRORBY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

Appellant Jose Yair Gomez-Diaz, a state prisoner appearing *pro se*, appeals the district court's denial of his motion to vacate a federal detainer against him

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

and terminate his supervised release. Mr. Gomez-Diaz filed his request after a federal warrant for his arrest issued following his violation of the terms of his supervised release and incarceration in a state facility. We deny Mr. Gomez-Diaz's motion to proceed on appeal without prepayment of costs or fees (*in forma pauperis*) and dismiss his appeal as frivolous.

I. Factual and Procedural Background

On July 25, 2000, Mr. Gomez-Diaz pled guilty in federal court for the district of Utah for possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The district court sentenced him to eighteen months incarceration and thirty-six months supervised release. The conditions of his supervised release included requirements he "obey all federal, state and local laws" and, if deported, "shall not re-enter the United States without permission from the Attorney General."

Mr. Gomez-Diaz completed his eighteen-month term of imprisonment and on March 9, 2001, began his term of supervised release. On January 12, 2002, just ten months into his thirty-six months of supervised release, police in West Jordan, Utah, arrested Mr. Gomez-Diaz for driving under the influence; during his arrest, he provided a false name and birth date. After federal authorities learned his true identity, they sought an arrest warrant for his violation of the terms of his

supervised release, including illegally re-entering the United States and violating state law. Accordingly, on July 3, 2002, the federal district court approved the issuance of a warrant for his arrest based on the violations of his supervised release. However, Mr. Gomez-Diaz's whereabouts remained unknown until March 2004, when federal authorities learned of his incarceration with the Nevada Department of Corrections on yet another criminal conviction and lodged a detainer with that department.[1]

Thereafter, on August 26, 2005, Mr. Gomez-Diaz sought a motion for modification of his supervised release in which he petitioned to serve any pending term of supervised release concurrently with his Nevada State prison term. On remand, concerning the timeliness of his action and appeal, the district court denied Mr. Gomez-Diaz's motion as premature, explaining: (1) the warrant for his arrest had not been served; (2) no case law or other legal authority suggested his supervised release for a federal criminal sentence may run concurrently with his state sentence and incarceration in such a situation; and (3) Mr. Gomez-Diaz failed to show either excusable neglect or good cause for the untimely filing of

---

[1] According to the government and Mr. Gomez-Diaz, he is serving a ten- to twenty-five-year state sentence for his September 2003 trafficking of a controlled substance in Elko, Nevada.

his notice of appeal of its decision. On May 3, 2006, this court dismissed his appeal for lack of jurisdiction based on his untimely filing of the appeal.[2]

Undeterred, on August 11, 2009, Mr. Gomez-Diaz filed the instant motion, in which he requested the district court issue an order vacating the detainer against him and terminating his supervised release, claiming he fully served and satisfied his thirty-six months of supervised release. In support, he claimed state authorities did not arrest him on state charges until February 3, 2003, and, thereafter, on May 17, 2003, his term of supervised release expired. Alternatively, he claimed that if his term of supervised release was still pending, only a few months were left, which, in the interest of justice, should be discharged given his lengthy state sentence. He also claimed the detainer against him "appears to be [for] an untried offense" for which he has the right to relief under the Interstate Agreement on Detainers Act, 18 U.S.C. App. 2 § 2, Art. III(a); the Speedy Trial Act, 18 U.S.C. §§ 3161-74; and the Due Process Clause.

---

[2] Thereafter, on April 2, 2007, Mr. Gomez-Diaz filed a motion to reduce or correct his federal sentence under Rule 35 of the Federal Rules of Criminal Procedure, arguing, in part, he was unable "to comply with the provisions of [his] supervised release, due to deportation to Mexico" and claiming his deportation sanction was never explained to him at the time he pled guilty. The district court denied his motion, explaining he failed to make such a motion within the seven-day period required after pronouncement of the sentence, and the government, which may make such a motion one year or more after sentencing, did not file such a motion with the court.

The government filed a response, providing both court and probation documents clearly showing Mr. Gomez-Diaz completed less than sixteen months of his term of thirty-six months of supervised release before the arrest warrant issued, and that the remainder of his supervised release tolled on July 3, 2002, when the warrant issued. It also provided legal authority readily establishing neither the Interstate Agreement on Detainers Act nor the Speedy Trial Act provisions would apply to Mr. Gomez-Diaz's situation until taken into federal custody. Clearly rejecting Mr. Gomez-Diaz's arguments and relying on the government's exhibits and legal arguments, the district court summarily denied his motion on August 18, 2010.

## II. Discussion

Mr. Gomez-Diaz now appeals, presenting the same arguments made in support of his motion by claiming the district court improperly denied his motion to vacate the detainer against him and terminate his supervised release in violation of his due process rights, the Speedy Trial Act, and the Interstate Agreement on Detainers Act. In so doing, he continues to argue he satisfied the term of his supervised release, despite the conclusive documents presented to the contrary, and claims the detainer against him pertains to the new offense or charge of illegal re-entry, even though the petition for an arrest warrant and the

warrant clearly state the warrant is for his violation of his supervised release. He has also filed a motion for leave to proceed *in forma pauperis*.

Generally, we review *de novo* alleged violations of the Speedy Trial Act, Due Process Clause, and the Interstate Agreement on Detainers Act. *See United States v. Allen*, 603 F.3d 1202, 1208 (10th Cir.) (regarding Speedy Trial Act), *cert. denied*, 131 S. Ct. 680 (2010); *Estate of DiMarco v. Wyoming Dep't of Corr.*, 473 F.3d 1334, 1339 n.3 (10th Cir. 2007) (regarding Due Process Clause); *United States v. Oberle*, 136 F.3d 1414, 1423 (10th Cir. 1998) (regarding general questions of statutory construction); *see also U.S. v. Jones*, 454 F.3d 642, 646 (7th Cir. 2006) (regarding Interstate Agreement on Detainers Act). While we construe a *pro se* litigant's pleadings liberally, *see Garza v. Davis*, 596 F.3d 1198, 1201 n.2 (10th Cir. 2010), the fact Mr. Gomez-Diaz is a *pro se* litigant does not prohibit this court from dismissing his appeal as frivolous. *See* 18 U.S.C. § 1915(e)(2). A claim or appeal is frivolous under § 1915 if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812-13 (10th Cir. 1997). We have held "[t]he right of access to the courts is neither absolute nor unconditional, and there is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious." *Winslow v. Hunter (In re Winslow)*, 17 F.3d 314, 315 (10th Cir. 1994) (*per curiam*) (internal quotation marks omitted).

-6-

In applying our standard of review and assessing whether Mr. Gomez-Diaz's appeal is frivolous, we begin by pointing out his appeal is based on the false premise his supervised release expired before or during his instant state conviction and incarceration. Instead, the court and probation documents clearly show he fulfilled less than sixteen months of his thirty-six-month term before an arrest warrant issued, which, as one probation document expressly explained, tolled the term of supervised release until his return to federal custody and supervision. *See United States v. Martin*, 786 F.2d 974, 975-76 (10th Cir. 1986). In sum, Mr. Gomez-Diaz is not entitled to credit against his term of supervised release for the period he was not under federal supervision due to "his own wrongful act[s]." *Id.* at 975. As a result, despite his contrary contention, his thirty-six-month term of supervised release has never been satisfied, and his appeal based on that premise is frivolous.

Mr. Gomez-Diaz's argument on appeal is also incorrectly premised on his claim the federal arrest warrant at issue is based on his illegal re-entry into this country and a newly-related charge, causing him to mistakenly further argue he has a right to a speedy trial on any such new charge. However, the petition for an arrest warrant and the arrest warrant itself unequivocally state the warrant is for his violation of the terms of his supervised release, and not on a separate illegal re-entry charge, making his appeal on this factual claim also frivolous.

Mr. Gomez-Diaz's legal arguments on appeal are also frivolous, given he has provided no relevant legal authority to support his claims or counter the dispositive legal principles provided by the government, both in the district court proceeding and on appeal. To wit, while the Speedy Trial Act applies to defendants arrested for a new offense, *see United States v. Bagster*, 915 F.2d 607, 609-11 and n.3 (10th Cir. 1990), it does not apply to the lodging of detainers. Instead, any proceeding on Mr. Gomez-Diaz's violation of supervised release, for which the arrest warrant was issued, may wait until completion of his state sentence. *Moody v. Daggett*, 429 U.S. 78, 89 (1976). In other words, because Mr. Gomez-Diaz is not in federal custody, he does not have a right to a revocation hearing or otherwise a "speedy trial" on such an issue. *See United States v. Fay*, 547 F.3d 1231, 1236 (10th Cir. 2008); *McDonald v. New Mexico Parole Bd.*, 955 F.2d 631, 633-34 (10th Cir 1991). Similarly, the Interstate Agreement on Detainers Act, which requires immediate transfer of a prisoner to another jurisdiction when there are detainers lodged on untried criminal charges, clearly does not apply to supervised release revocation detainers. *See Carchman v. Nash*, 473 U.S. 716, 725-28 (1985); *United States v. Romero*, 511 F.3d 1281, 1284 (10th Cir 2008).

As to Mr. Gomez-Diaz's general claim of a violation of his due process rights concerning any future revocation of his supervised release, he has not been

deprived of a liberty interest, nor is he otherwise entitled to due process safeguards, because the federal arrest warrant has not been executed and he has not been taken into federal custody. *See McDonald*, 955 F.2d at 634-35. In addition, it is readily apparent Mr. Gomez-Diaz is bringing the current action as a result of his unsuccessful attempt to have his supervised release run concurrently with his state incarceration, which he failed to timely appeal. However, the instant appeal cannot remedy his untimely appeal of that issue, and furthermore, any such request would be "premature because no decision to run the sentences concurrently could come before a determination of whether [he] should be sentenced for the violation of [his] supervised release." *Fay*, 547 F.3d at 1236 (quotation marks omitted).

Finally, to the extent Mr. Gomez-Diaz is arguing the federal detainer lodged in Nevada is somehow invalid, the Supreme Court has explained:

> A detainer ... is an internal administrative mechanism to assure that an inmate subject to an unexpired term of confinement will not be released from custody until the jurisdiction asserting a ... violation has had an opportunity to act ... by taking the inmate into custody or by making a ... revocation determination. When two autonomous jurisdictions are involved, as for example when a federal detainer is placed against an inmate of a state institution, a detainer is a matter of comity.

*Moody*, 429 U.S. at 80 n.2. Thus, any pending grounds for revocation of supervised release on which the detainer was issued may await completion of Mr.

Gomez-Diaz's state sentence without violating his constitutional rights. *See id.* at 88-89. Accordingly, Mr. Gomez-Diaz is not entitled to a revocation hearing until after he is taken into federal custody on the arrest warrant, *see McDonald*, 955 F.2d at 631, and his appeal, which is absent any factual or legal support, is simply frivolous.

## III. Conclusion

For the foregoing reasons, we **DENY** Mr. Gomez-Diaz's motion to proceed on appeal without prepayment of costs or fees and **DISMISS** his appeal as frivolous.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge