FILED
United States Court of Appeals
Tenth Circuit

July 21, 2020

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

ROBERT L. WILSON,

      Petitioner-Appellant,

v.

DAN SCHNURR, Warden,

      Respondent-Appellee.

No. 19-3245
(D.C. No. 5:18-cv-03048-KHV)
(D. Kan.)

ORDER DENYING CERTIFICATE OF APPEALABILITY[*]

Before **HOLMES**, **MURPHY**, and **CARSON**, Circuit Judges.

A Kansas jury convicted Robert L. Wilson of aggravated criminal sodomy

and rape. After unsuccessful state-court proceedings, Mr. Wilson petitioned the

District of Kansas for a writ of habeas corpus under 28 U.S.C. § 2254. The

district court denied that petition, and it also denied Mr. Wilson a certificate of

appealability ("COA"). Mr. Wilson, proceeding pro se,[1] now asks this court for a

---

[*]      This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

[1]      Because Mr. Wilson appeared pro se before the district court and does the same on appeal, we construe his filings liberally. *Erickson v. Pardus*,

(continued...)

COA. Exercising jurisdiction under 28 U.S.C. § 1291, we **deny** Mr. Wilson's application for a COA and **dismiss** his appeal.

## I

On July 7, 2008, nineteen-year-old N.H. called a chat line and connected with Mr. Wilson. During their conversation, Mr. Wilson falsely told N.H. that his name was "Jaylen," that he was in town from Texas, and that it was his birthday and he was looking to celebrate, among other fabrications. The two arranged for an in-person meet-up later that same day, during which Mr. Wilson raped N.H. He was subsequently charged with one count of rape and one count of aggravated criminal sodomy, and his case proceeded to trial in Kansas state court.

At trial, Mr. Wilson admitted that he had sex with N.H., but asserted consent as a defense. In support of its case, the State proffered, as relevant here, evidence of Mr. Wilson's alleged rape of a woman named N.L. (the "Missouri Evidence"), an offense that he purportedly committed about a month prior to his rape of N.H., and for which he had since been tried and ultimately acquitted in Missouri state court. Over Mr. Wilson's objection, the trial court ruled that the Missouri Evidence was admissible under Kan. Stat. Ann. § 60-455(d).

---

[1](...continued)
551 U.S. 89, 94 (2007) (per curiam); *accord Garza v. Davis*, 596 F.3d 1198, 1201 n.2 (10th Cir. 2010). In doing so, however, it is not "our role . . . to act as his advocate." *Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009).

The court reasoned that the factually similar circumstances under which N.L.'s rape was allegedly committed—e.g., Mr. Wilson purportedly met N.L. on a chat line, likewise gave her the fake name of Jaylen, and likewise falsely claimed it was his birthday, in addition to other similarities—evinced a "plan" by Mr. Wilson to induce the women into meeting him under false pretenses, thereby bearing on the core issue at trial, which was consent. R., Vol. II, at 28 (Trial Tr., Vol. V, dated Nov. 1, 2011); *see* KAN. STAT. ANN. § 60-455(d) (providing that evidence of "another act or offense of sexual misconduct" committed by defendant is admissible "for its bearing on any matter to which it is relevant and probative"). In light of the trial court's ruling, the State went on to introduce at trial evidence of the alleged rape of N.L. After several days of receiving evidence and hearing the parties' arguments, the jury found Mr. Wilson guilty on both the rape and aggravated-criminal-sodomy charges. The trial court subsequently sentenced him to concurrent sentences of 586 months for aggravated criminal sodomy and 155 months for rape.

After an unsuccessful direct appeal and state postconviction motion, Mr. Wilson turned to federal court. There, on March 1, 2018, he filed a 28 U.S.C. § 2254 petition seeking habeas relief, in which he asserted, in relevant part, the following claims: (1) the trial court's admission of the Missouri Evidence violated the collateral-estoppel component of the Double Jeopardy Clause, and (2) the trial

3

court erred in admitting the Missouri Evidence under Kan. Stat. Ann. § 60-455. R., Vol. I, at 9–10, 15 (Habeas Corpus Pet., filed Mar. 1, 2018). The district court denied him habeas relief on these and all other claims in his petition. *Id.* at 91–92 (Dist. Ct. Mem. & Order, filed Oct. 8, 2019). It also denied him a COA. Mr. Wilson now appeals, seeking a COA to challenge the district court's denial of his habeas petition.

## II

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a COA is a jurisdictional prerequisite to our merits review of a § 2254 appeal. *See* 28 U.S.C. § 2253(c)(1)(A); *see also Gonzalez v. Thaler*, 565 U.S. 134, 142 (2012) (discussing the "clear" jurisdictional language in § 2253(c)(1)). We may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, the applicant must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," "or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)); *accord Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Whether this showing has been made is "the only question" at the COA phase of habeas litigation; "a merits analysis" is

improper. *Buck v. Davis*, --- U.S. ----, 137 S. Ct. 759, 773 (2017); *see id.* ("The COA inquiry, we have emphasized, is not coextensive with a merits analysis.").

Where the state court has addressed the merits of the applicant's claims, "AEDPA's deferential treatment of state court decisions must be incorporated into our consideration of [the applicant's] request for a COA." *Dockins v. Hines*, 374 F.3d 935, 936–38 (10th Cir. 2004)); *accord Lockett v. Trammell*, 711 F.3d 1218, 1230 (10th Cir. 2013). Under AEDPA,

> a petitioner is entitled to federal habeas relief on a claim only if he can establish that the state court's adjudication of the claim on the merits (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Littlejohn v. Trammell*, 704 F.3d 817, 824 (10th Cir. 2013) (quoting 28 U.S.C. § 2254(d)(1), (2)). In applying that rubric, we limit our review "to the record . . . before the state court that adjudicated the claim on the merits," *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see id.* at 185 n.7, and we afford state-court factual findings a presumption of correctness rebuttable only by "clear and convincing evidence," *Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012) (quoting 28 U.S.C. § 2254(e)(1)). Needless to say, AEDPA imposes a "'highly deferential standard for evaluating state-court rulings,' which demands that

5

state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)).

However, we do not incorporate AEDPA's deferential standard into our consideration of a COA request where the state court did not adjudicate the merits of the claim at issue. "That is, '[t]he [deferential] § 2254(d) standard [of AEDPA] does *not* apply to issues not decided on the merits by the state court.'" *Grant v. Royal*, 886 F.3d 874, 889 (10th Cir. 2018) (first and second alterations in original) (quoting *Welch v. Workman*, 639 F.3d 980, 992 (10th Cir. 2011)).

Irrespective of whether the state court has reached the merits of the habeas claims that the district court resolved, in the COA context, our ultimate task is the same—stated briefly, to determine whether reasonable jurists could debate the correctness of the district court's resolution of those claims.

### III

In his COA application, Mr. Wilson asserts three claims. All three of these claims center on the trial court's admission of the Missouri Evidence—i.e., the evidence regarding Mr. Wilson's alleged rape of N.L. Specifically, construing his COA application liberally, Mr. Wilson asserts the following claims: (1) the trial court's admission of the Missouri Evidence violated the collateral-estoppel component of the Double Jeopardy Clause, *see* Aplt.'s Combined Opening Br. &

Appl. for a COA at 4 [hereinafter Appl. for COA][2]; (2) the court erred in finding a lack of privity, *see id.* at 5, 8; and (3) the court's admission of the Missouri Evidence under Kan. Stat. Ann. § 60-455 was so fundamentally unfair that it was a violation of his due-process rights, *see id.* at 6–8.  Affording solicitous consideration to these claims, we conclude that reasonable jurists could not debate whether the district court properly denied them.[3]

## A

Mr. Wilson's first claim, liberally construed, is that the trial court's admission of the Missouri Evidence violated the collateral-estoppel doctrine as embodied in the U.S. Constitution's Double Jeopardy Clause.

The Double Jeopardy Clause prevents the government from placing a defendant in jeopardy twice for the same offense.  *United States v. Dixon*, 509 U.S. 688, 695–96 (1993) (citing U.S. CONST. amend. V).  Although most

---

[2]    In light of the disjointed nature of the pagination in Mr. Wilson's COA application, for the sake of consistency and simplicity, all pincite citations to the COA application in this order correspond to the respective page numbers in the application's file-stamped header, located in the top-right corner of each page of the application.

[3]    In the months since filing his COA application, Mr. Wilson has filed additional documents that are essentially supplemental briefs in support of his application.  *See* Oral Args. & Opening Statements for Opening Br., No. 19-3245 (10th Cir., filed June 4, 2020); Add'l Args.[] for Suppl. Br., No. 19-3245 (10th Cir., filed June 29, 2020).  In the interest of affording liberal consideration to his claims, we have considered these supplemental briefs in connection with our resolution of the instant matter.  That said, we find that they merely rehash the arguments already asserted in his COA application and do not alter our analysis.

commonly thought of as a bar to successive prosecutions and multiple punishments for the same offense, the Supreme Court has held that this clause also "incorporates the doctrine of collateral estoppel in criminal proceedings." *Schiro v. Farley*, 510 U.S. 222, 232 (1994) (citing *Ashe v. Swenson*, 397 U.S. 436 (1970)). Collateral estoppel is the principle that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe*, 397 U.S. at 443. This principle is triggered when the following elements are met:

> (1) the issue previously decided is identical with the one presented in the action in question; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Smith v. Dinwiddie*, 510 F.3d 1180, 1188 (10th Cir. 2007). Tying all of this together, what this means, as relevant here, is the following: if the above four elements are met in the context of state criminal proceedings against a defendant, collateral estoppel, as "embodied in" the Double Jeopardy Clause, precludes the government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial. *See Ashe*, 397 U.S. at 443, 445–46; *accord Yeager v. United States*, 557 U.S. 110, 119 (2009).

8

Adopting this framework, Mr. Wilson argues that because he had been acquitted of the rape of N.L. in Missouri state court, collateral estoppel precluded the trial court in the underlying Kansas proceedings from admitting the Missouri Evidence proffered by the State at trial. Specifically, he argues that in the underlying proceedings, "[t]he State impermissibly sought to prove exactly what the Missouri court[4] failed to prove in the previous trial," thereby "put[ting] [him] in jeopardy twice" in violation of the Constitution's Double Jeopardy Clause. Appl. for COA at 4.

The Kansas Court of Appeals rejected this argument on direct appeal, reasoning, in salient part, as follows:

> Collateral estoppel is embodied in the Fifth Amendment to the United States Constitution, which prohibits double jeopardy. *Ashe*, 397 U.S. at 442–46. . . .
>
> For a number of reasons, the admission of the facts surrounding Wilson's acquittal in Missouri does not violate double jeopardy or collateral estoppel. First, the State of Kansas was not a party to the Missouri case, and there is no privity between the parties, which is required for collateral estoppel. Second, the Missouri case involved a different incident, a different time, a different location, and a different victim. Third, Wilson was not exposed to the possibility of being convicted for the rape of N.L. in the present case. Fourth, the issue of N.H.'s consent or lack of consent on July 7, 2008, was not litigated in the Missouri case. Fifth, and perhaps most important, a finding

---

[4] Construing his argument liberally, we presume that Mr. Wilson intended to refer to the Missouri prosecution rather than the "Missouri court."

9

that N.L. consented in the first case is not inconsistent with a finding that N.H. did *not* consent in this case.

*State v. Wilson*, 314 P.3d 900, 2013 WL 6726263, at *4 (Kan. Ct. App. 2013) (per curiam) (unpublished table decision) (citations omitted).

On review of Mr. Wilson's habeas petition, the district court agreed with the Kansas Court of Appeals on this matter. More specifically, it explained that the state court had "correctly identified the governing federal rule in *Ashe*" and had "reasonably applied federal law which is consistent with its holding that the Double Jeopardy Clause and collateral estoppel principles do not prohibit admission of [the Missouri Evidence]." R., Vol. I, at 80–81. The district court further noted that Mr. Wilson "ha[d] not shown that the state court unreasonably determined the facts." *Id.* at 81. Accordingly, it denied him habeas relief on this claim.

No jurist of reason could debate the district court's assessment of Mr. Wilson's claim. Indeed, even now, on appeal before this court, Mr. Wilson fails to address the federal authority undergirding the Kansas Court of Appeals's analysis on this issue—namely, *Ashe*—much less argue that the state court's application of *Ashe* to the facts at bar was unreasonable. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (noting that habeas relief is warranted, in relevant part, "only 'if the state court identifies the correct governing legal principle from [federal law] . . . but unreasonably applies that principle to the

10

facts of the prisoner's case'" (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000))).  Nor did Mr. Wilson give the district court adequate reason to question the reasonableness of the Kansas Court of Appeals's determination of the facts. *Richie v. Workman*, 599 F.3d 1131, 1135 (10th Cir. 2010) (observing that "under § 2254(e)(1) a state-court fact finding is binding on the federal courts unless rebutted by clear and convincing evidence").  Stated simply, Mr. Wilson fails to offer any cogent reason for us to question the district court's resolution of this claim.

Moreover, the one ascertainable argument that Mr. Wilson *does* provide in support of this claim—i.e., that "[t]he State impermissibly sought to prove exactly what the Missouri court failed to prove in the previous trial [seeing as he was acquitted in the Missouri proceedings]," Appl. for COA at 4—lends him no succor.  What we construe Mr. Wilson to be arguing here, in essence, is that the same issue was litigated in both the Missouri proceedings and the instant case—meaning that one of the elements of collateral estoppel could be met.  *See Smith*, 510 F.3d at 1188 (party invoking collateral estoppel must establish that "the issue previously decided is identical with the one presented in the action in question").

But that is simply not right.  What the State (i.e., the Missouri prosecutor) "failed to prove" in the Missouri proceedings was *N.L.*'s nonconsent (seeing as

11

Mr. Wilson was ultimately acquitted).  What the State (i.e., the Kansas prosecutor) later sought to prove in the underlying state-court proceedings, by contrast, was *N.H.*'s nonconsent.  Stated differently, the two proceedings turned on two different issues: the former concerned whether N.L. had consented, whereas the latter concerned whether N.H. had consented.  This is precisely what the Kansas Court of Appeals concluded, and what the district court, deferring to that court's reasoning, held in turn.

Suffice it to say, no jurist of reason could disagree with the district court's rejection of Mr. Wilson's claim that collateral estoppel barred admission of the Missouri Evidence and that his double-jeopardy rights were therefore violated. Accordingly, we deny Mr. Wilson a COA on this issue.

**B**

Mr. Wilson's second claim concerns the Kansas Court of Appeals's[5] alleged

---

[5] In his COA application, Mr. Wilson attributes this claimed error to the *district court*.  *See* Appl. for COA at 5 (contending that "*U.S. Dist. Judge Kathryn H. Vratil* denied [his] 2254 petition by invoking the 'no privity' standard" in holding that "there is no privity between the parties, which is required for collateral estoppel" (emphasis added)).  In actuality, however, it was the *Kansas Court of Appeals* that ruled on the issue of privity, *see Wilson*, 2013 WL 6726263, at *4; the district court merely quoted the Kansas Court of Appeals's holding as part of its broader recapitulation of that court's decision, *see* R., Vol. I, at 80.  It is of course true that in considering whether to grant a COA, our ultimate focus is on whether the district court's resolution of the underlying constitutional claim is debatable.  Yet, in the § 2254 setting, where the petitioners are state prisoners, such an underlying claim necessarily must relate to the ruling

(continued...)

12

"misuse[] [of] the Privity Rule." Appl. for COA at 3 (alteration omitted).

Specifically, he takes aim at the Kansas Court of Appeals's holding that "the

State of Kansas was not a party to the Missouri case, and there is no privity

between the parties, which is required for collateral estoppel." *Wilson*, 2013 WL

6726263, at *4. In that regard, he contends that privity existed in the underlying

state-court proceedings "between [himself] and the prior alleged victim [in the

Missouri proceedings, i.e.,] N.L.," and that the Missouri Evidence was therefore

"inadmissible to prove any factual basis for any determination in the State of

Kansas." Appl. for COA at 5–6. By "misus[ing]" the "Privity Rule," *id.* at 3, he

says, the court flouted the Full Faith and Credit Clause of the U.S. Constitution,

*id.* at 5 (citing U.S. CONST. art. IV, § 1).

We reject this claim for the simple reason that Mr. Wilson has waived it by

failing to present it in his habeas petition. On direct appeal, the Kansas Court of

Appeals ruled on the merits of the privity issue: in addressing Mr. Wilson's claim

---

[5](...continued)
of a state court, not a federal district court. Consequently, we liberally construe Mr. Wilson's COA request as involving a challenge to the privity ruling of the Kansas Court of Appeals. As we explicate *infra*, however, the problem for Mr. Wilson is that, in his habeas petition, he did not present a challenge to the Kansas Court of Appeals's privity ruling. That is, he did not present in his habeas petition a constitutional claim concerning this ruling that the district court could resolve. Therefore, he has waived any challenge to this ruling, and there is no proper foundation—*viz.*, a district court's resolution of a constitutional claim—for us to even consider granting COA relief.

13

contesting the trial court's ruling that collateral estoppel did not preclude the Missouri Evidence, *see supra* Part III.A, the Kansas Court of Appeals held, in no uncertain terms, that privity did not exist between the parties, *see id.*; *see also Wilson*, 2013 WL 6726263, at *4. There is thus no reason that, in his habeas petition in the district court, Mr. Wilson could not have challenged the state court's ruling on that basis. He did not do so, however, much less did he make a privity argument framed as a constitutional claim couched in the Full Faith and Credit Clause. Only now, for the first time in his COA application, does he make such an argument.

But as this court has made plain, this will not do: a claim or theory raised for the first time in a COA application is generally treated as waived. *See Harmon v. Sharp*, 936 F.3d 1044, 1085 (10th Cir. 2019) (Holmes, J., concurring) (observing that "in the AEDPA context, our precedent usually has treated arguments that petitioners have not advanced before the district court as waived—*viz.*, not subject to review at all"); *Stouffer v. Trammell*, 738 F.3d 1205, 1221 n.13 (10th Cir. 2013) (declaring same); *see also Owens v. Trammell*, 792 F.3d 1234, 1246 (10th Cir. 2015) (concluding that "[b]ecause the argument was not raised in [petitioner's] habeas petition, it is waived on appeal"); *United States v. Viera*, 674 F.3d 1214, 1220 (10th Cir. 2012) (denying COA on issues not presented to district court in § 2255 motion, in light of court's "general rule

14

against considering issues for the first time on appeal"); *cf. Jones v. Gibson*, 206 F.3d 946, 958 (10th Cir. 2000) (noting that court was not required to consider argument that "[p]etitioner did not make . . . in his revised habeas petition"). Accordingly, we decline to consider Mr. Wilson's newly raised argument and deny him a COA on this issue.

## C

Mr. Wilson's third and final claim contests the trial court's "[u]se of KSA §60-455," Appl. for COA at 8, which provides for the admission of evidence "of another act or offense of sexual misconduct [committed by defendant]" "for its bearing on any matter to which it is relevant and probative," KAN. STAT. ANN. § 60-455(d).

Recall that at trial, in admitting the Missouri Evidence, the court invoked Kan. Stat. Ann. § 60-455(d). The court reasoned that the factually similar circumstances under which N.L.'s rape was allegedly committed—e.g., as with N.H., Mr. Wilson purportedly met N.L. on a chat line, gave her the fake name of Jaylen, and falsely told her that he was in town from Texas and that it was his birthday—evinced a "plan" by Mr. Wilson to induce the women into meeting him under false pretenses, and that this was relevant to and probative of the issue of consent, thereby rendering that evidence admissible under § 60-455(d). Now, in contesting the trial court's "[u]se of KSA §60-455" to admit the Missouri

15

Evidence, Mr. Wilson argues that the court "affected [his] fundamental [due-process] rights to a fair trial." Appl. for COA at 7–8.

The district court disagreed. In addressing this claim as raised by Mr. Wilson in habeas proceedings, it held that Mr. Wilson had failed to show that the trial court's admission of the Missouri Evidence under § 60-455 created a fundamentally unfair trial. It explained that "'evidence of a plan to put women in situations where nonconsent would be difficult to prove is probative' of the issue of consent." R., Vol. I, at 82 (quoting *Wilson*, 2013 WL 6726263, at *7). That is to say, the admission of the Missouri Evidence was consistent with § 60-455. The district court further noted that upon the trial court's admission of this evidence, "[t]rial counsel cross examined N.L., the jury weighed her credibility, [and] the trial court instructed the jury concerning the limited purpose of N.L.'s testimony." *Id.* In view of all of this, the district court concluded, Mr. Wilson could not show that the Missouri Evidence was so unreliable that it created a fundamentally unfair trial, and he was thus not entitled to relief on this claim.[6]

---

[6] Neither the state trial court nor the Kansas Court of Appeals addressed this federal due-process claim. Nevertheless, construing his habeas petition liberally, the district court allowed for the possibility that Mr. Wilson objected to the admission of the Missouri Evidence on federal due-process grounds (as well as on state-law grounds) and denied relief. R., Vol. I, at 81 ("To the extent petitioner's claim could be construed to assert that the state district court violated his due process rights by admitting unreliable evidence, the Court denies relief."). Even if the state courts did not address this due-process claim
(continued...)

16

At the outset, we note, importantly, that "[f]ederal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." *Thornburg v. Mullin,* 422 F.3d 1113, 1128–29 (10th Cir. 2005) (quoting *Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999)). To that end, like the district court, we construe Mr. Wilson's claim as alleging a violation of his constitutional due-process rights, and as such, "[t]he essence of [the] inquiry . . . is whether the admission of the [Missouri Evidence] rendered the proceedings fundamentally unfair." *Smallwood*, 191 F.3d at 1275; *see also Martin v. Kaiser*, 907 F.2d 931, 934 (10th Cir. 1990) ("[A]ny errors in the admissibility of evidence are not grounds for habeas corpus relief absent fundamental unfairness so as to constitute a denial of due process of law."). We conclude that reasonable jurists could not debate the district court's resolution of

[6](...continued)
because Mr. Wilson did not fairly present it to them—meaning that the claim is unexhausted—under the circumstances here, the district court could still permissibly deny the claim on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Moore v. Schoeman*, 288 F.3d 1231, 1235 (10th Cir. 2002) ("[I]ndividual, unexhausted claims may be denied, but only if the result allows the court to determine the *entire petition* on the merits."); *accord Farris v. Allbaugh*, 698 F. App'x 950, 958 (10th Cir. 2017) (unpublished). However, because no state court ruled on the merits of this claim, we do not incorporate AEDPA deference into our consideration of whether to grant a COA with respect to the district court's ruling. *See, e.g.*, *Grant*, 886 F.3d at 889.

this inquiry—that is, its conclusion that the admission of the Missouri Evidence did not render the proceedings fundamentally unfair.

The central issue at trial was whether N.H. had consented to having sex with Mr. Wilson, and the Missouri Evidence was proffered and admitted for its bearing on that very issue: "[a]s evidence of [Mr. Wilson's] plan to create a situation in which the victim would have difficultly [sic] showing lack of consent." R., Vol. I, at 82; *see, e.g.*, *Smallwood*, 191 F.3d at 1275 ("Given the probative nature of the photographs[, *inter alia*,] . . . the admission of the photographs [did not render] the proceedings against petitioner fundamentally unfair."). Further undercutting Mr. Wilson's claim is the fact that, as alluded to by the district court, the admission of the Missouri Evidence "was fully and competently aired in the state courts." *Moore v. Gibson*, 195 F.3d 1152, 1167–68 (10th Cir. 1999) (quoting *Spence v. Johnson*, 80 F.3d 989, 1000 (5th Cir. 1996)). That is to say, the trial court allowed the parties to vigorously litigate the Missouri Evidence's admissibility, and, upon that evidence's admission, Mr. Wilson had ample opportunity to cross-examine N.L. and other key witnesses. *See, e.g.*, *id.* (rejecting due-process claim challenging admission of evidence connecting habeas petitioner to murder where, *inter alia*, testifying witness and underlying evidence were fulsomely challenged on cross-examination).

Given this state of affairs, Mr. Wilson offers only one discernible argument as to why the admission of the Missouri Evidence violated his due-process rights. Specifically, he argues that under Kan. Stat. Ann. § 60-447 and certain other state evidentiary rules, "[e]vidence regarding [a] defendant's character [is] limited to evidence of [that defendant's] conviction of [a] crime." Appl. for COA at 6 (citing §§ 60-446, 60-447, 60-448). And here, because the Missouri Evidence was not evidence of a conviction, his line of reasoning goes, it was admitted in violation of his fundamental rights. Mr. Wilson is correct that under § 60-447, "evidence of specific instances of conduct . . . which tends to prove [a person's character] trait to be bad" that is used "to prove conduct on a specified occasion" is generally inadmissible, with the exception of evidence of a prior conviction. KAN. STAT. ANN. § 60-447.

But § 60-447 and the other statutory provisions that he invokes are plainly inapposite, as they concern the admission of *character evidence*—which the admission of the Missouri Evidence simply does not implicate. Rather, as the trial court made clear, that evidence was admitted for the express purpose of proving *a plan* carried out by Mr. Wilson, *viz.*, not for proving his conformity with a certain *character trait*. This argument is therefore without merit.

In sum, reasonable jurists could not debate the district court's determination that the Missouri Evidence's admission under Kan. Stat. Ann.

19

§ 60-455 did not render the proceedings fundamentally unfair and violate Mr. Wilson's due-process rights.  Accordingly, we deny Mr. Wilson's request for a COA on this issue.

## IV

For the foregoing reasons, we **DENY** Mr. Wilson's application for a COA and **DISMISS** this appeal.


ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge

20