FILED
United States Court of Appeals
Tenth Circuit

December 12, 2007

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

KIP ANTONIO SMITH,

                Petitioner-Appellant,

     v.

WALTER N. DINWIDDIE, Warden,

                Respondent-Appellee.

No. 06-5116

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. NO. CV-02-601-CVE)**

---

Fred Randolph Lynn, Tulsa, Oklahoma, for Petitioner-Appellant.

Theodore M. Peeper, Assistant Attorney General, Office of the Attorney General of Oklahoma, Oklahoma City, Oklahoma, for Respondent-Appellee.

---

Before **BRISCOE**, **McWILLIAMS**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

This habeas petition presents an unusual question of collateral estoppel. In 2000, Kip Antonio Smith was convicted of sexual abuse of a minor child. But only fourteen months earlier, in a civil deprived-child action, a jury had rejected the state's allegations that he had sexually abused a child in a manner that was

shocking and heinous or which caused severe harm or injury. In his state appeal,

Smith unsuccessfully argued that the jury's findings in the earlier civil proceeding

precluded a contrary finding in his criminal case. *See Smith v. Oklahoma*, 46 P.3d

136, 137 (Okla. Crim. App. 2002).

Smith petitioned for habeas corpus relief pursuant to 28 U.S.C. § 2254.

The district court denied Smith's petition, finding that the decision of the

Oklahoma Court of Criminal Appeals (OCCA) in the state appellate proceedings

was not contrary to, or an unreasonable application of, clearly established federal

law.

We agree and therefore affirm the district court's denial of Smith's

application for a writ of habeas corpus.

## I. Background

On November 30, 1998, the State of Oklahoma filed a petition to terminate

Kip Smith's parental rights over his two daughters, E.S. and K.S., following

allegations he had sexually molested their half-sisters, B.J. and A.H. At the time,

Smith was divorced from E.S. and K.S.'s mother, but had retained custody.

Under Oklahoma law, deprived-child/termination proceedings are designed

to establish the status of children and their parents. In particular, the proceedings

answer whether a child is deprived and whether the parents should retain the right

to care for them. Oklahoma defines a "deprived child" as (1) "destitute, homeless

or abandoned"; (2) lacking "proper parental care or guardianship"; or (3) living in

an unfit place "by reason of neglect, cruelty, or depravity." Okla. Stat. tit. 10, § 7001-1.3(a), (b). If the child is found to be deprived and an aggravating factor is present, parental rights may be terminated. *Id.*, § 7006-1.1(A). One aggravating factor is a finding the parent has physically or sexually abused the child or the child's sibling in a manner "that is heinous or shocking to the court" or that caused "severe harm or injury" to the child. *Id.*, § 7006-1.1(A)(10).

The deprived-child/termination action against Smith went to trial in juvenile court on January 19, 1999. The state called five witnesses: B.J., A.H., a police detective, a social worker, and a nurse practitioner. The thrust of the state's case was Smith had sexually abused B.J. and A.H. while they were under his care. The state sought a jury verdict that E.S. and K.S. were deprived children and should be removed from Smith's custody. Smith testified in his defense, claiming B.J. had previously alleged he abused her, only to later recant. He also said he thought B.J. had been coached to give certain testimony by her mother, Smith's ex-wife.

During deliberations, the jury sent two hand-written notes to the judge. The first asked, "If we feel that [B.J.] was abused, but not by Kip Smith, should we still consider that [E.S. and K.S.] are deprived since Kip Smith has no control over [B.J.]?" Transcript of Proceedings, Case No. JVD-98-254 (Dist. Ct. Tulsa Co. Jan. 21, 1999). The court told the jury to refer to the instructions it had

already issued.[1]  The jury's second note to the judge read, "We are close.  Please

reaffirm the following.  If we say the children are deprived, are we in any way

implicating Kip Smith in sexual abuse and altering his parental rights?  Or are we

only moving on to possibly more evidence regarding his actual actions?"  *Id.*  The

court responded to this note by again referring the jury to the instructions.

　　The jury then returned a general verdict finding that E.S. and K.S. were

deprived.  But the jury also answered "no" to four special interrogatories

regarding sexual abuse.[2]  Since the jury found Smith's conduct did not match the

---

[1]  Jury Instruction No. 2 stated:

"[Y]ou are specifically instructed that the questions for the jury to determine are
as follows:
　　1) Whether or not the child(ren) are 'deprived'; and/or
　　2) Whether or not the parent physically and/or sexually abused the
　　child(ren), or a sibling, in a manner that is 'shocking and heinous' or that
　　caused severe harm or injury; or
　　3) Whether or not the parent failed to protect the child(ren), or a sibling,
　　from physical and/or sexual abuse that is 'shocking and heinous' or caused
　　severe harm or injury.
The term 'shocking and heinous' is defined as being extremely wicked or evil, or
designed to inflict a high degree of pain or suffering, or utter indifference to or
enjoyment of the suffering of others."  R., Case No. 06-5116 (10th Cir.), at 28.

Jury Instruction No. 1 stated that the term "deprived child" means "any person
under eighteen (18) years of age who has not the proper parental care or
guardianship; or who is for any reason destitute, homeless or abandoned; or
whose home, by reason of neglect, cruelty or depravity on the part of the parents,
guardian or other person in whose care it may be, is an unfit place for such child."
*Id.* at 27.

[2]  The special interrogatory form, with the jury's answers, reads as follows:

(continued...)

-4-

allegations in the interrogatories (despite a general verdict that the children were deprived), the court did not reach the issue of whether Smith's parental rights should be immediately terminated. As the court explained to the jury:

> Ladies and gentlemen of the jury, you reached a verdict finding that the two minor children in this case were deprived children. You, also, came to the conclusion that based on the evidence presented at trial, that they were not deprived based on sexual or physical abuse of a shocking and heinous nature. That is one of the requirements under the law in order for the State of Oklahoma to proceed with immediate termination, which would have been the second part of this trial. Based on your answers to those questions, the State of Oklahoma is not going to be able to proceed with immediate termination.

Transcript of Proceedings, Case No. JVD-98-254 (Dist. Ct. Tulsa Co. Jan. 21, 1999). Nevertheless, the deprived-child finding allowed the court to terminate, at a later time, Smith's parental rights if the court subsequently found termination was in the best interests of the children. Ultimately, the court made this determination and awarded sole custody of E.S. and K.S. to their natural mother.

---

[2](...continued)
"We further find the following to exist (the Jury may find all to exist, one or more to exist, or that none exist. The Jury does not have to find one of the following in order to find this child to be deprived):

    1) Has the natural father sexually abused a child or a sibling in a manner that is shocking and heinous; or Answer: No
    2) Has the natural father sexually abused a child or a sibling in a manner which caused severe harm or injury to said child; or Answer: No
    3) Has the natural father failed to protect this child or a sibling from sexual abuse that is shocking and heinous; or Answer: No
    4) Has the natural father failed to protect this child or a sibling from sexual abuse which caused severe harm or injury to said child? Answer: No."
R., Case No. 06-5116 (10th Cir.), at 39.

-5-

While this deprived-child/termination civil action was pending, prosecutors charged Smith with criminal child sexual abuse of B.J. in violation of Okla. Stat. tit. 10, § 7115.[3] Several months later, after the deprived-child action had concluded, the state was ready to begin the criminal trial. Smith moved to dismiss the charges against him based on the doctrine of collateral estoppel. He argued the civil court jury had found he did not sexually abuse B.J. and, therefore, the state was barred from proceeding with its criminal case.

The criminal court denied the motion, concluding that the ultimate facts in the deprived-child/termination case were different than those in the criminal case. In the criminal proceeding, the state was not required to prove Smith sexually abused B.J. in a manner that was shocking and heinous or that caused her severe harm or injury, as had been the case in the deprivation action. Rather, it had to prove only that Smith had sexually abused B.J.—without further proof of aggravating factors. A jury trial began on March 6, 2000, and Smith was convicted and sentenced to 15-years imprisonment.

Smith appealed his sentence directly to the OCCA. In rejecting his collateral estoppel argument, the OCCA agreed with the trial court that the two

---

[3] That provision defines "child sexual abuse" as "willful or malicious sexual abuse" of a child under eighteen years of age, where sexual abuse "includes, but is not limited to, rape, incest and lewd or indecent acts or proposals made to a child, as defined by law, by a person responsible for the child's health, safety or welfare." Okla. Stat. tit. 10, §§ 7115(E) and 7102(B), ¶6.

proceedings sought to prove different ultimate facts. *Smith*, 46 P.3d at 137–38. The OCCA determined the special interrogatories permitted a finding that Smith had sexually abused B.J. in a manner that was not shocking and heinous and did not cause severe harm or injury to the child. *Id.* at 138. One judge dissented, arguing every act of child sexual abuse was heinous and shocking and necessarily caused severe harm or injury. *Id.* at 139.

Smith petitioned for habeas relief under 28 U.S.C. § 2254. Although the federal district court initially denied his petition, we granted a certificate of appealability. *Smith v. Beck*, 130 F. App'x 244, 245 (10th Cir. 2005). We remanded the case for a complete review of the record in light of the collateral estoppel principles set forth in *Ashe v. Swenson*, 397 U.S. 436 (1970). *Id.* at 246. On remand, the district court once again denied relief. *Smith v. Dinwiddie*, No. 02-601, 2006 WL 1666184, at *9 (N.D. Okla. June 8, 2006). The district court found the OCCA had properly applied the doctrine of collateral estoppel and the ruling was not contrary to, or an unreasonable application of, clearly established federal law.

## II. Analysis

### A. Standard of Review

We have jurisdiction to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or

treaties of the United States." 28 U.S.C. § 2254(a). Relief is permissible only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). *See generally Maynard v. Boone*, 468 F.3d 665 (10th Cir. 2006).

> For a decision to be *contrary to* clearly established federal law,
>
> [A] petitioner could show that the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or that the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [their] precedent.

*Maynard*, 468 F.3d at 669 (internal quotation marks and alterations omitted). For a decision to involve an *unreasonable application of* clearly established federal law, a petitioner must show the state court's application of federal law was "objectively unreasonable," which means "most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Id.* at 671. "It is not enough that the decision is clearly wrong or that the reviewing court would have reached a contrary decision. . . . [T]he state court decision must be at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary as to be unreasonable." *Id.* (internal quotation marks omitted).

The only federal law that can be clearly established for purposes of Smith's § 2254(d) appeal is Supreme Court precedent interpreting the Constitution. We

may not rely upon non-constitutional Supreme Court decisions to determine whether § 2254(d) relief is appropriate. Precedents not based on constitutional grounds are "off the table as far as § 2254(d) is concerned." *Early v. Packer*, 537 U.S. 3, 10 (2002) (per curiam). Nor may we look to circuit court decisions or Supreme Court decisions interpreting federal common law. *See id.* (holding inapplicable precedents "based on [the Court's] supervisory power over the federal courts, and not on constitutional grounds").

With this standard of review in mind, we turn to Supreme Court case law applicable to Smith's collateral estoppel claim.

### B.  Supreme Court Framework

This case requires us to examine the related concepts of collateral estoppel and double jeopardy. The Fifth Amendment's Double Jeopardy Clause prevents the government from trying the same person twice for the same offense.[4] The Clause embodies two broad principles: protection against a second prosecution for the same offense (whether after acquittal or conviction) and protection from multiple punishments for the same crime. *See Illinois v. Vitale*, 447 U.S. 410, 415 (1980). Relatedly, collateral estoppel prevents a party from relitigating an issue that has already been decided. Although better known as a civil law concept, collateral estoppel also applies in criminal cases. *See, e.g., United States*

---

[4] The Double Jeopardy Clause provides, "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. 5, cl. 2.

*v. Oppenheimer*, 242 U.S. 85, 87 (1916). In the criminal context, the doctrine of collateral estoppel serves to: (1) reduce chances of wrongful conviction after an acquittal, (2) strengthen notions of finality, (3) preserve judicial resources, and (4) restrain overzealous prosecutors. *See* Note, *The Due Process Roots of Criminal Collateral Estoppel*, 109 Harv. L. Rev. 1729, 1732 (1996).

The Supreme Court has clearly established that the doctrine of collateral estoppel applies in state criminal cases via the Fifth and Fourteenth Amendments. The doctrine is embodied in the Fifth Amendment's Double Jeopardy Clause, which has been incorporated against the states via the Fourteenth Amendment. *Ashe v. Swenson*, 397 U.S. 436, 445 (1970). "*Ashe* thus makes it clear that collateral estoppel applies insofar as it is necessary to safeguard against the risk of double jeopardy . . . ." *Showery v. Samaniego*, 814 F.2d 200, 203 (5th Cir. 1987); *see also* Wayne R. LaFave et al., *Criminal Procedure* § 17.4(a) (2d ed. 1999) (noting "an *Ashe* collateral estoppel claim . . . is grounded in the double jeopardy clause" and only applies where the earlier proceedings were "undertaken for the purpose of imposing . . . punishment"). Thus, state courts are constitutionally required to apply principles of collateral estoppel in criminal cases if and only if the protections of the Double Jeopardy Clause have been triggered.

As relevant here, the Double Jeopardy Clause's protections are triggered by the imposition of multiple criminal penalties for the same underlying conduct.

-10-

The Clause does not prohibit the imposition of every sanction that might be described as punishment. Rather, it "protects only against the imposition of multiple *criminal* punishments for the same offense." *Hudson v. United States*, 522 U.S. 93, 99 (1997). To be in jeopardy, a defendant must face "the risk that is traditionally associated with a criminal prosecution" and "then only when such occurs in successive proceedings." *Id.*; *see also Breed v. Jones*, 421 U.S. 519, 528 (1975) (holding that double jeopardy does not apply unless the punishment is "*essentially criminal*" (emphasis added)).

A civil remedy may constitute punishment for Double Jeopardy purposes where the remedy is so punitive we deem it criminal in nature. *See Hudson*, 522 U.S. at 99. In evaluating the nature of a civil sanction, the Supreme Court instructs us to look to the plain language of the statute at issue in light of a variety of factors:

> (1) [w]hether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Id.* at 99–100 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963)). The Court has cautioned these factors "must be considered in relation to the statute on its face," and "only the clearest proof" will suffice to override

-11-

legislative intent and transform a seemingly civil remedy into a criminal penalty. *Id.* at 100 (quoting *United States v. Ward*, 448 U.S. 242, 249 (1980)). These principles have been reaffirmed in a number of subsequent cases. *See, e.g.*, *Smith v. Doe*, 538 U.S. 84, 92–106 (2003) (evaluating the civil remedy through legislative intent and the *Mendoza-Martinez* factors); *Seling v. Young*, 531 U.S. 250, 262–65 (2001) (reaffirming the two-step process of considering legislative intent, followed by the *Mendoza-Martinez* factors).

If the Double Jeopardy Clause is triggered by state court proceedings, we then look to *Ashe* and its progeny to determine the precise contours of the collateral estoppel principle. Under *Ashe*, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 397 U.S. at 443. This principle bars only the relitigation of "ultimate issues" decided in a prior criminal proceeding. Collateral estoppel will not apply, therefore, if a rational jury could have based its verdict upon an issue not decided in the prior case. *See Schiro v. Farley*, 510 U.S. 222, 232 (1994). Nor will collateral estoppel extend as far as "to exclude relevant and probative evidence . . . simply because it relates to alleged criminal conduct for which a defendant has been acquitted." *Dowling v. United States*, 493 U.S. 342, 348 (1990).

Collateral estoppel bars the adjudication of a particular claim in a subsequent proceeding when four elements are met. Those elements are: (1) the

-12-

issue previously decided is identical with the one presented in the action in question; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *E.g.*, *Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014, 1022 (10th Cir. 2001).

Interpreting the Supreme Court's relevant constitutional precedents, then, the doctrine of collateral estoppel applies in state criminal proceedings only if the Double Jeopardy Clause is triggered by an earlier proceeding. For an issue to be barred from relitigation under the doctrine, the petitioner must show the four elements of the collateral estoppel test have been satisfied.

### C. Application

To determine whether Smith is entitled to relief under this legal framework, we must ask two questions. First, whether the OCCA was required because of the Double Jeopardy Clause to apply the collateral estoppel doctrine in Smith's criminal sexual abuse case. This requires an analysis of whether the sanction imposed upon Smith in the earlier proceeding was civil or criminal. Second, assuming application of collateral estoppel was mandated, we examine whether the prior jury decided an ultimate fact precluding the subsequent criminal proceeding. This analysis depends on a review of the ultimate facts determined by each jury.

-13-

### 1. Civil Versus Criminal

The OCCA was not required to apply *Ashe*'s collateral estoppel doctrine in this case. The deprived-child proceedings against Smith were civil in nature, and thus he has not suffered successive criminal punishments. We reach this conclusion by first interpreting the relevant portions of the Oklahoma Children's Code (Okla. Stat. tit. 10, § 7001-1.1, *et seq.*) and then applying the seven *Mendoza-Martinez* factors.

To determine whether the state subjected Smith to a criminal punishment in the earlier proceeding, we look initially to the Oklahoma statutory scheme. "A court must first ask whether the legislature, 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.'" *Hudson*, 522 U.S. at 99 (quoting *Ward*, 448 U.S. at 248). Oklahoma has clearly chosen the civil label. The Oklahoma legislature devoted special provisions of the Oklahoma children's code to deprived-child/termination proceedings. These provisions are distinct from the criminal sexual abuse provisions. *Compare* Okla. Stat. tit. 10, § 7006-1.1 (termination of parental rights) *with* Okla. Stat. tit. 10, § 7115 (malicious child sexual abuse); *see also* Okla. Stat. tit. 21, § 1123(A) (sexual abuse of child under sixteen or believed to be under sixteen). The focus of neglect proceedings is to quickly resolve the placement of children, not to determine the ultimate guilt or responsibility of particular custodians. *See In re H.J.*, 854 P.2d 381, 383 (Okla. Civ. App. 1993)

("[T]he entire philosophical rubric permeating the Juvenile Act relates to promoting the welfare of children—not the infliction of punishment."). The Oklahoma legislature has made clear, "The paramount consideration in proceedings concerning termination of parental rights shall be the health, safety or welfare and best interests of the child." Okla. Stat. tit. 10, § 7006-1.1(A). The state's burden of proof is "clear and convincing" evidence, and appeals from juvenile proceedings are heard by the Oklahoma Court of Civil Appeals, not the Oklahoma Court of Criminal Appeals. Thus, the Oklahoma legislature has expressed a plain preference for considering deprived-child/termination cases as civil.

The seven *Mendoza-Martinez* factors further support a finding that the termination proceedings are civil in nature. Although the sanction of losing parental rights "involves an affirmative disability or restraint," none of the other factors point in the direction of criminality. A child may be deemed deprived and parental rights may be terminated without a "finding of scienter"; the proceedings are not designed to "promote the traditional aims of punishment"; the behavior to which the proceedings apply is not necessarily "already a crime"; and the penalty does not "appear[] excessive in relation to the alternative purpose assigned." *See Hudson*, 522 U.S. at 99–100; *Ives v. Boone*, 101 F. App'x 274, 290–91 (10th Cir. 2004). Again, the focus of the deprived-child/termination hearing is whether custody should remain with a parent or guardian. While criminal behavior may

-15-

be examined in making this determination, Oklahoma law establishes different standards and procedures in resolving parental rights than it does in creating criminal liability for child abuse. As Oklahoma courts have recognized, "[t]ermination of parental rights cases, despite the high liberty interest at stake, are civil in nature." *In re K.L.C.*, 12 P.3d 478, 480 (Okla. Civ. App. 2000); *see also In re K.W.*, 10 P.3d 244, 245–46 (Okla. Civ. App. 2000) (treating a deprived child hearing as a civil case); *Ives*, 101 F. App'x at 290 (finding Oklahoma courts consider deprivation hearings civil in nature).

Based on the relevant statutory language and the seven *Mendoza-Martinez* factors, we cannot conclude "the statutory scheme is so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." *Simpson v. Bouker*, 249 F.3d 1204, 1212 (10th Cir. 2001) (quoting *Hudson*, 522 U.S. at 99); s*ee also Showery*, 814 F.2d at 203–04 (holding that *Ashe* does not constitutionally compel application of collateral estoppel from parol revocation hearings resulting in imprisonment, which are civil in nature). Because Smith's first trial was not criminal in nature, the Double Jeopardy Clause is not triggered and his reliance on *Ashe* is without merit.

Smith's reliance on *Bowling v. State*, 470 A.2d 797 (Md. 1984), is similarly misplaced. On facts similar to those in this case, the Maryland Court of Appeals held that the doctrine of collateral estoppel prevented the state from criminally prosecuting an individual on charges of sexual assault after the state had failed, in

an earlier child-custody proceeding, to show sexual abuse had occurred. *Bowling*, 470 A.2d at 800–02. Our assessment of the relevant case law looks, of course, only to the United States Supreme Court. *Early*, 537 U.S. at 10. But in any event, *Bowling* provides Smith no more help than *Ashe*. While applying the doctrine of collateral estoppel from the earlier civil proceeding to the criminal proceeding as a matter of state law, the court ignored the constitutional nuance of the collateral estoppel doctrine. A state can certainly choose—as a matter of state law—to broadly apply collateral estoppel to criminal proceedings. But Supreme Court precedent does not *require* it to do so under federal law. The Supreme Court's cases apply collateral estoppel as an aspect of the Double Jeopardy Clause, which is triggered only by successive *criminal* penalties.

The OCCA's decision to uphold Smith's criminal sentence thus was not contrary to, nor an unreasonable application of, clearly established federal law.

### 2. Collateral Estoppel

Even if the OCCA were constitutionally required to apply the doctrine of collateral estoppel in this case, Smith would still not prevail. For although the OCCA was not required to determine whether Smith's criminal prosecution was barred under *Ashe v. Swenson*, it nevertheless chose to do so. *See Smith*, 46 P.3d at 137–38. Applying the elements of collateral estoppel as announced in *Ashe*, the OCCA found the deprived child proceedings did not bar the subsequent criminal action. *Id.*

The OCCA determined the issues adjudicated in the civil case were not "identical with" those adjudicated in the criminal case. *Id.* at 138. The court concluded the verdict in the deprived-child/termination proceeding sufficiently differed from the verdict in the criminal trial. The civil jury examined whether Smith had committed sexual abuse with aggravating factors—*i.e.*, sexual abuse that was shocking and heinous or seriously harmful to the child. *Id.*; *see also* Jury Instr. No. 2, *supra*, n.1. The criminal statute Smith was convicted under, Okla. Stat. tit. 10, § 7115, did not require the criminal jury to find any aggravating factors. Thus, the OCCA found Oklahoma law distinguishes heinous and shocking or severely harmful or injury-causing sexual abuse of a child from other kinds of child sexual abuse.

We may not necessarily agree with the OCCA's conclusion that the two jury findings were distinct. Nevertheless, "[w]e are bound to accept the state court's construction of that State's statutes." *Parker v. Scott*, 394 F.3d 1302, 1319 (10th Cir. 2005) (quoting *Missouri v. Hunter*, 459 U.S. 359, 368 (1983)). A state court's "interpretation of the state . . . statute is a matter of state law binding on this court" in habeas proceedings. *Id.* On the record before us, we cannot conclude the OCCA's interpretation of state law in applying collateral estoppel to Smith's criminal proceeding was so objectively unreasonable as to be contrary to, or an unreasonable application of, governing Supreme Court precedent as required by 28 U.S.C. § 2254(d)(1).

Accordingly, the district court did not err in denying habeas relief.

## III. Conclusion

For the reasons set forth above, the district court's denial of Smith's application for a writ of habeas corpus is AFFIRMED.