**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 29, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

LINDSAY O'BRIEN QUARRIE,

    Plaintiff - Appellant,

v.

BOARD OF REGENTS FOR NEW
MEXICO INSTITUTE OF MINING &
TECHNOLOGY, in their official
capacities; STEPHEN WELLS, in his
individual and official capacities; DANIEL
H. LOPEZ, in his individual and official
capacities; ALY EL-OSERY, in his
individual and official capacities; ALISA
WIGLEY-DELARA, in her individual and
official capacities,

    Defendants - Appellees.

No. 24-2050
(D.C. No. 1:23-CV-00546-MV-JFR)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **CARSON**, and **FEDERICO**, Circuit Judges.
_____

Lindsay O'Brien Quarrie filed the underlying lawsuit after the New Mexico

Institute of Mining and Technology (NMT) cancelled and took no action on his

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

second application for readmission to its PhD program.  The district court dismissed

the case under Federal Rule of Civil Procedure 12(b)(6).  Quarrie now appeals.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

Much of the factual background is detailed in our decisions affirming the

district court's dismissal of Quarrie's previous federal lawsuits against NMT and

various individuals associated with it.[1]  *See Quarrie v. Wells (Quarrie II)*,

No. 21-2090, 2022 WL 2299105, at *1-2 (10th Cir. June 27, 2022), *cert. denied*,

143 S. Ct. 511 (2022); *Quarrie v. N.M. Inst. of Mining & Tech. (Quarrie I)*,

621 F. App'x 928, 929-30 (10th Cir. 2015).  We do not repeat that background

information, other than to provide context for our consideration of the issues

presented in this appeal.

Quarrie was a student and doctoral candidate at NMT, but NMT terminated

him from the PhD program in 2012.  In *Quarrie I*, we affirmed the district court's

dismissal of Quarrie's first lawsuit, which alleged his termination was racially

discriminatory in violation of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d.[2]

*See* 621 F. App'x at 934.  The parties then entered into a settlement agreement that

barred Quarrie from seeking readmittance to NMT, required NMT to "remove the

---

[1] Quarrie also filed two unsuccessful state court actions.

[2]  In a separate decision, we affirmed the district court's denial of a permanent injunction in the litigation underlying *Quarrie I*.  *Quarrie v. N.M. Inst. of Mining & Tech.*, 584 F. App'x 916, 917 (10th Cir. 2014).

words 'TERMINATED FROM GRADUATE PROGRAM' (or any similar language) from [his] transcript," and prohibited NMT from adding any "such language" to his transcript "at any future time." *Quarrie II*, 2022 WL 2299105, at *1 (internal quotation marks omitted). He refers to the latter two provisions as the "language removal requirement" and "language addition prohibition," respectively. Aplt. Opening Br. at 44.

Soon after the settlement, Quarrie discovered NMT had added the notation "no degree earned" to his transcript. *Quarrie II*, 2022 WL 2299105, at *1. NMT refused to delete that notation despite Quarrie's claim that it was defamatory and violated the settlement agreement. In addition, he inspected his academic and administrative file at NMT and discovered four copies of the letter advising him of his termination. He took the position that the settlement agreement was void because NMT had breached it by adding "no degree earned" to his academic transcript and by retaining the letter in his file. He then applied for readmission. NMT cancelled and took no action on the application on the basis that the settlement agreement prohibited his reapplication. He filed the second lawsuit in 2017, alleging that the failure to act on his application was racially discriminatory and violated his constitutional rights. Among other theories about why the settlement agreement was not in effect when NMT refused to consider his application, he alleged he had unilaterally rescinded the agreement based on NMT's addition of "no degree earned" to his transcript.

During discovery, the district court ordered the defendants to disclose how many copies of the termination letter existed in NMT records and their locations.

3

The defendants produced 24 copies of the letter, which had all been in the Office of Graduate Studies' legal file. Ultimately, the court dismissed some of Quarrie's claims under Rule 12(b)(6) and granted summary judgment for the defendants on the rest. The court held that when the defendants decided to take no action on his application, they honestly believed the agreement was still in effect and barred him from seeking readmittance. Although the court noted that resolution of the rescission issue was unnecessary because the decisive question was whether the defendants honestly believed the agreement was in effect when they decided not to act on his application, it found Quarrie failed to establish grounds for rescission. The court further found that Quarrie failed to establish that the defendants' proffered reason for refusing to consider his application—that the settlement agreement prohibited his reapplication—was a pretext for racial discrimination. In *Quarrie II*, we upheld the district court's holdings and affirmed the resulting judgment.

That brings us to the events underlying the action at issue in this appeal. Except where otherwise indicated, the following facts are taken from Quarrie's complaint and the exhibits to the complaint.

In 2023, Quarrie visited NMT again to inspect his records and discovered two copies of the termination letter that had not been disclosed during discovery in the 2017 lawsuit. He advised NMT that he was unilaterally rescinding the settlement agreement because retaining the two additional copies breached the agreement and constituted fraud on the court. He again applied for readmission and, as before, NMT took no action on the application on the basis that the settlement agreement barred

4

him from seeking readmittance.  Quarrie filed this action, alleging several "Counts" and seeking damages and other claim-specific relief.[3]  Specifically, he asserted: (1) a fraud on the court claim (Count I) for which he requested that the judgment in *Quarrie II* be set aside pursuant to Federal Rule of Civil Procedure Rule 60(d)(3) to remedy the fraud (Count II) and appointment of a special master to investigate the fraud (Count III) (collectively, the fraud on the court claim); (2) a claim for a declaratory judgment that he unilaterally rescinded the settlement agreement before applying for readmission in 2023 (Count IV); (3) claims of racial discrimination (Count V) and retaliation (Count VI) in violation of Title VI and the Fourteenth Amendment, for which he requested a permanent injunction (Count VII); and (4) a claim for malicious defamation under the Fourteenth Amendment (Count VIII), which the district court liberally construed as a claim under 42 U.S.C. § 1983.

All defendants filed motions to dismiss the complaint on various grounds under Rule 12(b)(6).  A magistrate judge recommended dismissal of all claims and, after overruling Quarrie's objections, the court adopted that recommendation. Depending on the claim, the court dismissed based on failure to allege facts supporting the claim, res judicata, and collateral estoppel.  The court concluded Quarrie could not prevail on any of the facts alleged in the complaint and found it

---

[3] Quarrie stated some of his requests for a particular remedy as separate "Counts" in the complaint.  *See* R. at 316, 317, 324. These requests are not freestanding legal claims.

5

would be futile to allow him leave to amend. The court therefore dismissed the complaint and entered judgment.

## STANDARD OF REVIEW

Because the legal sufficiency of a complaint is a question of law, we review dismissals under Rule 12(b)(6) de novo, applying the same standards that applied in the district court. *See Cnty. of Santa Fe v. Pub. Serv. Co.*, 311 F.3d 1031, 1034 (10th Cir. 2002). To avoid dismissal, "a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotation marks omitted). In conducting our review, we accept all well-pleaded facts as true, view them in the light most favorable to the plaintiff, and draw all reasonable inferences in his favor. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). But "the tenet that a court must accept" well-pleaded factual allegations as true "is inapplicable to legal conclusions," so we are not bound by the plaintiff's recital of legal principles supported by conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik*, 671 F.3d at 1191. Our duty is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Quarrie represents himself, so "we liberally construe his filings, but we will not act as his advocate." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

## DISCUSSION

I.    **Fraud on the Court Claim**

A.  **Legal Standards**

Courts have the inherent authority to correct a judgment obtained by fraud on the court. *United States v. Williams*, 790 F.3d 1059, 1071 (10th Cir. 2015). But because "a finding of fraud on the court permits the severe consequence of allowing a party to overturn the finality of a judgment," "only the most egregious conduct" rises to the level of fraud on the court. *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1291 (10th Cir. 2005) (internal quotation marks omitted); *see also United States v. Beggerly*, 524 U.S. 38, 47 (1998) (holding that relief from a judgment for fraud on the court is "available only to prevent a grave miscarriage of justice").

"When alleging a claim of fraud on the court, the plaintiff must show by clear and convincing evidence that there was fraud on the court, and all doubts must be resolved in favor of the finality of the judgment." *Weese v. Schukman*, 98 F.3d 542, 552 (10th Cir. 1996). Fraud on the court is fraud that is "directed to the judicial machinery itself," and it occurs "where the impartial functions of the court have been directly corrupted." *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985). It "requires a showing that [the defendant] has acted with an intent to deceive or defraud the court." *Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1267 (10th Cir. 1995).

7

The relevant inquiry is not whether the alleged fraud prejudiced the opposing party, but whether it harmed "the integrity of the judicial process." *Williams*, 790 F.3d at 1071 (internal quotation marks omitted). Thus, we have consistently held that allegations of false statements, perjury, "nondisclosure in pretrial discovery," and "nondisclosure to the court of facts allegedly pertinent to the matter before it[] will not ordinarily rise to the level of fraud on the court." *United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir. 2002) (internal quotation marks omitted); *see also Plotner v. AT & T Corp.*, 224 F.3d 1161, 1170 (10th Cir. 2000) (holding that fraud on the court "refers to misrepresentation direct[ly] affecting the judicial process, not simply the non-disclosure to one party of facts known by another"); *Weese*, 98 F.3d at 553 (holding that allegations that defendant concealed material facts in discovery and at trial, "even if true, cannot properly be characterized as fraud on the court").

**B. Discussion**

In his fraud on the court claim, Quarrie sought relief from the judgment in the 2017 lawsuit based on the allegation that during discovery in that case, the defendants intentionally concealed the existence and whereabouts of the two additional copies of the termination letter he later found in NMT's file. He claimed the nondisclosure "caused the unjust and unlawful dismissal" of that action because those copies of the letter would have provided the "necessary evidence" to demonstrate both that NMT was aware "he had unilaterally rescind[ed] the Settlement Agreement" before he applied for readmission the first time, and that its

8

"proffered reason for refusing to readmit" him was a pretext for its "ongoing racial discrimination and retaliation against" him.  R. at 313-15.

The district court concluded his allegations failed because the nondisclosure did not affect the outcome of the 2017 lawsuit.  It explained that it dismissed that case because NMT had a legitimate, nondiscriminatory reason for rejecting his application for readmission—the settlement agreement—and he did not offer sufficient evidence that this reason was pretextual.  The court held that even if the two additional letters had been produced during discovery, they "would have done nothing to influence" that decision, so they "would have had no impact on the disposition of that lawsuit."  R. at 688.

Quarrie claims the court failed to credit his factual assertions, failed to consider his pro se status, and applied the wrong legal standard.  We disagree.

The district court correctly articulated the standard for dismissal of a complaint under Rule 12(b)(6), including the requirement that it accept Quarrie's well-pleaded factual allegations as true.  It said it was "cognizant" of his pro se status and the requirement that it construe his pleadings liberally and hold them to a less stringent standard than pleadings drafted by lawyers. R. at 679.  And it correctly identified the legal standards for pleading a fraud on the court claim.  Nothing in the court's ruling suggests it failed to adhere to these standards.

As an initial matter, we reject Quarrie's argument that the court erred by not applying the "different legal standard" advocated in a law review article cited in his opposition to the motions to dismiss "for finding fraud on the court in cases where

9

pro se litigants have been the victim of abusive discovery practices." Aplt. Opening Br. at 39. This Circuit has not adopted that standard, and the district court was bound to follow our precedent. *See United States v. Spedalieri*, 910 F.2d 707, 709 & n.2 (10th Cir. 1990).

In support of his argument that the court failed to credit his factual assertions, Quarrie points to its statement that the defendants' conduct in the 2017 litigation was "directed at him, not the Court." R. at 688. But that statement was not a rejection of his allegation that the defendants in that litigation intentionally violated the court's discovery orders. Rather, the court made that statement in the context of concluding that his allegations, even if taken as true, did not satisfy the requirement that, to constitute fraud on the court, the challenged conduct must be "directed to the judicial machinery" in an effort to influence or corrupt the court. *Bulloch*, 763 F.2d at 1121. The other "factual" allegations Quarrie claims the court ignored are not facts—they are his conclusions about the legal significance of the facts. For example, he concludes that the defendants' failure to disclose the additional letters proved that NMT breached the settlement agreement, that the breach provided a basis for him to unilaterally rescind the agreement, and that NMT's reliance on the agreement was a pretext for discrimination. The court was not required to credit his legal conclusions. *See Wasatch Equality v. Alta Ski Lifts Co.*, 820 F.3d 381, 387 n.4 (10th Cir. 2016) (explaining that while the complaint's factual assertions are taken as true for purposes of a Rule 12(b)(6) motion, legal conclusions are not); *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1144 (10th Cir. 2013) (same).

10

Relying on *Buck* and *Weese*, and "assuming [Quarrie's] facts are true,"
R. at 690, the district court held that his allegations, at best, established that the
defendants in the 2017 lawsuit committed "discovery misconduct," not fraud on the
court, R. at 688. His disagreement with that ruling does not establish that the court
failed to credit his factual allegations or that it applied the wrong legal standard. And
although his pro se status entitled him to some pleading leeway, the broad reading
requirement did not relieve him "of the burden of alleging sufficient facts on which a
recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1109
(10th Cir. 1991). We agree with the district court's analysis, and we find no error in
its dismissal of this claim. *See Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180,
1187 (10th Cir. 2014) (affirming Rule 12(b)(6) dismissal of action to set aside
judgment based on fraud in defendants' filings and testimony in earlier action,
explaining that allegations about "litigation misconduct fail to rise to the level of a
claim for fraud on the court").

## II.  Claims Dismissed on Preclusion Grounds

The district court dismissed three of Quarrie's claims on preclusion grounds.
Specifically, it dismissed his declaratory judgment and retaliation claims as barred by
collateral estoppel, and his race discrimination claim as barred by res judicata.

### A. Legal Standards

"The doctrines of res judicata, or claim preclusion, and collateral estoppel, or
issue preclusion, are closely related." *Sil–Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507,
1520 (10th Cir.1990). Res judicata prevents a second assertion of the same claim or

cause of action, while collateral estoppel prevents a second litigation of the same issue in a different claim or cause of action. *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir. 1995) (res judicata); *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (collateral estoppel). We review the district court's application of both doctrines de novo. *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005) (res judicata); *Salguero v. City of Clovis*, 366 F.3d 1168, 1172 (10th Cir. 2004) (collateral estoppel).

Res judicata applies when there is "(1) a judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *King v. Union Oil Co. of Cal.*, 117 F.3d 443, 445 (10th Cir. 1997). Collateral estoppel also requires a final judgment in the previous action, but instead of requiring identity of all parties and the cause of action, it requires identity of the party against whom it is invoked and identity of the issue previously decided and the one presented in the action in question. *Smith v. Dinwiddie*, 510 F.3d 1180, 1188 (10th Cir. 2007). For either doctrine to apply, the party resisting it must have had a full and fair opportunity to litigate the cause of action or issue in the prior action. *Johnson v. Spencer*, 950 F.3d 680, 708 (10th Cir. 2020) (res judicata); *Smith*, 510 F.3d at 1188 (collateral estoppel).

## B. Discussion

Quarrie challenges the district court's determinations regarding the identity of claims and issues and its conclusion that he had a full and fair opportunity to litigate the claims and issues in the 2017 litigation.

12

## 1. Identity of Claims and Issues

The district court held that Quarrie's declaratory judgment and retaliation claims raised the same issues that were decided in the 2017 litigation and that his current race discrimination claim was the same cause of action as the 2017 race discrimination claim. He challenges those rulings, arguing that the issues and claims are different because his new claims rely on different evidence and legal theories.

### a. *Declaratory Judgment Claim*

Quarrie sought a judgment declaring that he unilaterally rescinded the settlement agreement before he applied for readmission in 2023 and that the agreement "therefore did not prohibit [his] admissions application." R. at 318, 320. The district court dismissed the claim on collateral estoppel grounds, concluding that the underlying issue was the same as the issue decided against him in the 2017 litigation—whether NMT reasonably believed the settlement agreement was enforceable and whether its reliance on the agreement was a legitimate reason to reject his application for readmission.

Quarrie takes issue with that ruling, insisting that the issues were different because the claims in the two cases were based on different breaches of the settlement agreement and different rescission theories, and the court in the 2017 case did not resolve the precise issue raised by his declaratory judgment claim. Specifically, in the 2017 case he claimed he rescinded the agreement based on NMT's addition of the term "no degree earned" to his transcript in violation of the language addition prohibition, and in the declaratory judgment claim in this case he

13

claimed he rescinded the agreement based on NMT's retention of the two additional copies of the letter in violation of the language removal requirement.  He argues that although the court in the 2017 case rejected his first rescission theory, it "did not litigate and determine the validity and enforceability of the Settlement Agreement with respect to the language removal requirement, which is distinct and separate from the language addition prohibition."  Aplt. Opening Br. at 44 (boldface omitted).

When the plaintiff alleges that conduct occurred at different times, courts consider whether (1) there is "substantial overlap" in the evidence or arguments in the two proceedings; (2) the same "rule of law" is involved in the two proceedings; (3) pretrial preparation and discovery in the first action could have covered the matter sought to be presented in the second case; and (4) whether the claims involved in the two proceedings are "closely related." *B-S Steel of Kan., Inc. v. Tex. Indus., Inc.,* 439 F.3d 653, 663 (10th Cir. 2006) (internal quotation marks omitted).  "Where these questions can be answered in the affirmative, it is likely that the issue involved in the two proceedings is the same" *Id.* (internal quotation marks omitted).

The district court answered all of these questions in the affirmative.  It explained that the declaratory judgment claim "relies nearly entirely on the same legal theory" as his claims in the 2017 case, and "the premise of his argument is the same: unilateral rescission of the settlement agreement for alleged breach by" the defendants.  R. at 698-700.  It further explained that "[t]he rule of law to be applied in this case is the same as that applied in the 2017 lawsuit: whether [Quarrie] can establish that [NMT's] proffered reason for declining to process his application for

14

readmission . . . is pretext such that [he] can establish his claims under Title VI."
R. at 700. As for coverage of the issue during discovery, the court observed that
although the two additional copies of the letter that form the basis of Quarrie's
declaratory judgment claim were not produced during discovery in the 2017
litigation, NMT's retention of the letter was a hotly disputed issue during the
discovery process, and it produced the 24 other copies it had in its files. Finally, the
court held that "the claims in the instant case are indisputably related to those
adjudicated in the 2017 lawsuit." R. at 700.

Contrary to Quarrie's contention, the fact that the 2017 litigation did not
resolve his new rescission theory does not undermine the court's determination that
the issues in the two cases were the same for collateral estoppel purposes. He found
copies of the letter in his file before he applied for readmittance the first time, and he
notified NMT then that he believed its retention of the letter breached the settlement
agreement and was an additional reason the agreement was null and void. Despite
this notification and his insistence that he had unilaterally rescinded the agreement
based on the "no degree earned" notation, NMT consistently maintained the
agreement was valid and repeatedly informed him it disagreed with his assertions to
the contrary. In dismissing his claims in the 2017 case, the court rejected his
rescission argument, holding that his evidence—including evidence that NMT had
retained the letter in its files—was insufficient to show that NMT's belief that the
agreement was still valid was pretextual. The issue presented by Quarrie's
declaratory judgment claim in this case, though based on a different rescission

15

theory, is in substance the same as the issue resolved against him in *Quarie II*, and other than his discovery of the two additional copies of the letter, the controlling facts have not changed. A new rescission theory based on NMT's retention of two more copies of the same letter does not provide a basis for avoiding the preclusive effect of the court's rejection of his arguments in the 2017 litigation. *See Montana v. United States*, 440 U.S. 147, 157-58 (1979) (holding that "[a]bsent *significant* changes in controlling facts or legal principles since" the first judgment was entered, the prior "resolution of these issues is conclusive" (emphasis added)).[4]

### b. *Retaliation Claim*

Quarrie alleged NMT violated Title VI by refusing to consider his second application for readmittance in retaliation for his having filed the 2017 lawsuit. The district court concluded this claim and his related request for injunctive relief were barred by collateral estoppel because they, like the declaratory judgment claim, were an attempt to relitigate the pretext issue. In challenging that ruling, Quarrie argues that NMT's assertion that it believed the settlement agreement prohibited his reapplication "is knowingly false and intentionally spiteful," and that when NMT cancelled his second application, it "knew full well" that he had rescinded the agreement. Aplt. Opening Br. at 49-50. But these arguments go to the merits of the

---

[4] Having concluded the declaratory judgment claim was barred by collateral estoppel, we need not consider Quarrie's arguments regarding the merits of his new rescission theory.

pretext issue, not the propriety of the district court's collateral estoppel ruling. And we find no error in that ruling.

Title VI provides that no person shall "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" because of the person's race, color, or national origin. 42 U.S.C. § 2000d; *see Baker v. Bd. of Regents*, 991 F.2d 628, 631 (10th Cir. 1993). To be actionable, the alleged discrimination must be "intentional." *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). The plaintiff must produce evidence linking the defendants' conduct "to a discriminatory or retaliatory motive with something besides sheer speculation." *Bekkem v. Wilkie*, 915 F.3d 1258, 1274-75 (10th Cir. 2019) (internal quotation marks omitted) (discussing discrimination claim under Title VII); *Bryant v. Indep. Sch. Dist. No. I–38*, 334 F.3d 928, 930 n.1 (10th Cir. 2003) (recognizing that "[c]ourts often use [the] Title VII proof scheme for Title VI claims").

To prevail on his retaliation claim, Quarrie had to show that he engaged in protected opposition to discrimination by filing the 2017 lawsuit and that there is a causal connection between that protected activity and NMT's cancellation of his second application for readmission. *See Estate of Bassatt v. Sch. Dist. No. 1*, 775 F.3d 1233, 1238 (10th Cir. 2014) (discussing Title VII retaliation claim). To make that showing, he had to present evidence that NMT's proffered legitimate nondiscriminatory reason for cancelling his application—that the settlement agreement was in effect and barred the application—was pretextual. *See id.* As we

17

have already explained, despite his new rescission theory, his argument that NMT knew the settlement agreement was invalid is an attempt to relitigate the pretext issue that was decided against him in the prior litigation.

### c. *Race Discrimination Claim*

Quarrie next argues the district court erred in concluding his current race discrimination claim and related request for injunctive relief were the same cause of action as his 2017 race discrimination claim. He insists the causes of action are different because the current claim is based on NMT's retention of the additional copies of the letters and its refusal to consider his 2023 application, while the 2017 claim was based on NMT's refusal to consider his 2017 application.

We use a transactional test in determining the identity of the causes of action for res judicata purposes. *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1151 (10th Cir. 2006). Under this test, "[t]he causes of action need not be identical in the sense that they raise the same claims based on the same facts." *Id.* (internal quotation marks omitted). "All that is required is that they arise out of the same transaction, or series of connected transactions . . . ." *Id.* (internal quotation marks omitted). Res judicata is "inapplicable where, between the first and second suits, an intervening . . . modification of significant facts create[s] new legal conditions." *Spradling v. City of Tulsa*, 198 F.3d 1219, 1223 (10th Cir. 2000).

Applying the transactional test here, the district court concluded Quarrie's new claim was an attempt to relitigate the 2017 claim because both stemmed from the same series of connected transactions—namely, NMT's alleged breaches of the

settlement agreement, Quarrie's assertions that the agreement was no longer in effect because he rescinded it, NMT's reliance on the agreement as the basis for refusing to consider his applications for readmission, and his claim that NMT's reliance on the agreement was a pretext for discrimination. The court rejected his argument that the claims did not arise from the same transaction because the facts that form the basis for his current claim—the nondisclosure of two additional copies of the letter and NMT's refusal to consider his 2023 application—were new. The court explained that the discovery of the two previously undisclosed copies of the same letter was an "insignificant" shift in the evidence because NMT's "maintenance of [the] letter [was] not new conduct" given NMT's admission during the 2017 litigation that it had not removed all letters from his file. R. at 694. The court further explained that Quarrie's pretext argument stemmed from NMT's retention of the letter, not the number of copies it retained. Thus, he "would have been unable to prove his claims even if these two letters were produced to him in discovery." R. at 694-95.

Before this court, Quarrie reiterates his factual narrative and reasserts the argument he raised below, but he does not address the district court's reasoning. His factual narrative is not a "substitute for legal argument," and he has given us no basis to question the district court's decision. *Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015) ("The first task of an appellant is to explain to us why the district court's decision was wrong."). His insistence that the claims are different boils down to an argument that the *Quarrie II* defendants' retention of the two previously undisclosed copies of the letter provides additional evidence supporting

19

his pretext argument. But he points to no authority establishing an exception to res judicata for new evidence that might bolster a claim that has already been litigated.

### 2. Full and Fair Opportunity to Litigate

Quarrie argues the district court erred in concluding he had a full and fair opportunity to litigate his claims in the 2017 case. Specifically, he argues NMT's "fraudulent concealment" of the two additional copies of the letter resulted in a "procedural failure" in the 2017 case because it deprived him of the "critical evidence" he needed to prove pretext in the 2017 case. Aplt. Opening Br. at 41.

"The full and fair opportunity to litigate inquiry is a narrow exception that applies only where the requirements of due process were not afforded—where a party shows a deficiency that would undermine the fundamental fairness of the original proceedings." *Johnson*, 950 F.3d at 709 (internal quotation marks omitted) (analyzing res judicata requirements); *see Burrell v. Armijo*, 456 F.3d 1159, 1172 (10th Cir. 2006) (analyzing full and fair opportunity to litigate requirement of collateral estoppel and recognizing that "our collateral estoppel jurisprudence is consistent with the notion that due process concerns are relevant in assessing whether to recognize a [prior] judgment"). Factors courts consider in determining whether a party had a full and fair opportunity to litigate a claim or issue in a prior proceeding are whether there were any significant procedural limitations, the resisting party's incentive to fully litigate the claim or issue, and "whether effective litigation was limited by the nature or relationship of the parties." *Johnson*, 950 F.3d at 709 (internal quotation

marks omitted) (res judicata); *Burrell*, 456 F.3d at 1172 (internal quotation marks omitted) (collateral estoppel).

Applying those factors here, the district court found that Quarrie encountered no significant procedural limitations in the 2017 litigation, that he had every incentive to litigate the issues fully and did so through summary judgment, and that he was not constrained by the nature of the parties' relationship. Quarrie does not address the applicable factors or the district court's reasoning, and we are not persuaded that his inability to present evidence in the 2017 litigation of NMT's retention of the two additional copies of the letter prevented him from litigating his claims or otherwise called the fairness of that proceeding into question.

## III. **Defamation Claim**

Quarrie alleged that two of the defendants defamed him by making statements that contradicted his assertion that he was expelled from the doctoral program "without due process and thus in violation of NMT's policy and procedures for non-academic discipline." R. at 326. The district court dismissed the claim against one defendant on immunity grounds because he made the allegedly defamatory statement during a deposition. *See Snell v. Tunnell*, 920 F.2d 673, 686-87 (10th Cir. 1990) (explaining that witnesses "are immune from civil damages based upon their testimony" because they "must be free to testify without fear of a later civil action, so as not to deter witnesses or influence their testimony"); *Griffin v. Summerlin*, 78 F.3d 1227, 1231 (7th Cir. 1995) ("The policy considerations underlying witness immunity for testimony in open court apply with equal force to other forms of testimony such

21

as depositions and affidavits."). The court dismissed the claim against the other defendant because Quarrie's alleged loss—the delayed discharge of his federal student loans—did not amount to the deprivation of a constitutionally protected property interest. *See Abdi v. Wray*, 942 F.3d 1019, 1032 (10th Cir. 2019) (discussing elements of governmental defamation claim, including that the plaintiff "suffered the loss of a right or interest that has attained constitutional status" (internal quotation marks omitted)).[5]

Quarrie now argues the district court "erred by not recognizing that the delayed discharge of [his] student loans has caused [his] financial loss, which in turn has wreaked havoc on [his] life and education." Aplt. Opening Br. at 50. But he ignores the district court's reasoning, and he points to no authority that would undermine its ruling. Because he has failed to show any reversible error, we affirm the district court's dismissal of this claim. *See Nixon*, 784 F.3d at 1366 (affirming dismissal of claim where appellant's brief failed to challenge the basis for the district court's ruling).

---

[5] Quarrie asserted a defamation claim in the 2017 litigation based on different alleged damages—NMT's acceptance of his application fee and failure to take action on his application. The district court dismissed the claim, concluding he failed to show he suffered the loss of a constitutionally protected property right, and we affirmed. *Quarrie II*, No. 21-2090, 2022 WL 2299105, at *3.

22

## CONCLUSION

We affirm the district court's judgment.

Entered for the Court


Gregory A. Phillips
Circuit Judge